Cecilia E. RICE, Appellant,

v.

Norman PERL and Richard Hunegs, individually and d.b.a. DeParcq, Anderson, Perl, Hunegs & Rudquist; DeParcq, Anderson, Perl, Hunegs & Rudquist, P. A., Respondents,

W. F. Browne, Respondent,

Aetna Casualty & Surety Company, Respondent.

No. 51792.

Supreme Court of Minnesota.

June 11, 1982.

Post, Syrios & Bradshaw, Bradley Post and Arden J. Bradshaw, Wichita, Kan., for appellant.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, O. C. Adamson II, and W. D. Flaskamp, Minneapolis, for Perl et al.

Larkin, Hoffman, Daly & Lindgren and James P. Miley, Minneapolis, for Browne.

Collins, Buckley, Sauntry & Haugh and Theodore J. Collins, St. Paul, for Aetna.

OTIS, Justice.

This is an appeal by plaintiff Cecelia Rice, and a request for review by defendants Norman Perl and the law firm of DeParcq, Anderson, Perl, Hunegs and Rudquist, (hereinafter "the Perl defendants"), resulting from findings that defendants breached their fiduciary duty to Rice, their client, by failing to disclose their ongoing relationship with defendant Willard Browne, a claims adjuster employed by defendant Aetna Casualty & Surety Co.

The Perl firm was paying Browne during the time he was representing Aetna in negotiations with the Perl firm to settle Rice's claim against Aetna's insured. The trial court dismissed all other claims against the Perl defendants and all claims against defendants Richard Hunegs individually, Browne, and Aetna. We affirm the finding of liability and the penalties for breach of fiduciary duty.

This suit grew out of the Perl defendants' representation of Rice in the settlement of her tort claim against A. H. Robins Co., an insured of Aetna. Rice was allegedly injured as a result of using a "Dalkon Shield" intrauterine device manufactured by A. H. Robins Co. She was referred by a friend to Norman Perl. They met in September 1977, discussed her claim, and signed a retainer agreement, with fees to be paid on a contingent basis. Perl and Rice next met in late January 1978 to discuss a proposed settlement in the amount of $50,000 that Perl had negotiated with Aetna, A. H. Robins Co.'s insurer in all Dalkon Shield matters.

On February 9, 1978, Rice executed the settlement agreement and signed a broad "full and final" release running to A. H. Robins Co. "and all other persons, firms or corporations" from all claims "known and unknown, suspected and unsuspected" resulting from her Dalkon Shield injury.[1]

The Dalkon Shield settlement was negotiated by Perl with Willard Browne, an Aetna claims adjuster of 35 years experience and a "good friend" of Perl's for at least five or six years. It is undisputed that from 1976 through 1979, Browne was simultaneously employed and paid as a claims adjuster by Aetna and by the Perl firm on a part-time basis. Therefore, during the same period of time that Browne was supposed to be vigorously representing Aetna in Dalkon Shield claims, including Rice's claim, he was receiving payments from the Perl firm, an adversary as to those claims.

Payments made by the Perl firm to Browne were estimated by Perl to be: $7,000 in 1976, $1,500–2,000 in 1977, $10,000 in 1978, and $20,000 in 1979. Browne was paid both by checks drawn on the firm's general operating account and by having the firm pay travel agencies for trips for

---

1. At this time, Rice and Perl disputed the percentage fee due the firm under the retainer agreement: a printed "33⅓%" figure was overwritten by hand with the figure of "50%." After accepting two checks in the amount of 50% of the settlement less expenses, Rice later retained attorney Richard Solum to represent her in her fee dispute with Perl. After a con- ference with Richard Hunegs representing the Perl firm, Rice accepted $5,000 in settlement. On September 14, 1978, Rice executed a broad release running to the Perl firm. It released the firm from all claims arising from "any matter or thing done, omitted or suffered to be done by [the Perl firm] prior to and including the date hereof."

Browne and his wife. Such accounting practices were exceptional. Normal firm practice was for the bookkeeper to pay outside consultants directly, after receiving itemized billings for services rendered. With Browne, the bookkeeper drew checks in an amount specified by Perl, and gave the check to Perl. Perl then paid Browne directly.

Normal accounting procedures for consulting expenses were also bypassed in another significant respect. Normally, the bookkeeper posted the itemized billing amounts directly to ledger books for each client. With Browne, however, the bookkeeper randomly posted the payments, subdivided into smaller amounts of $75 to $150, to accounts of FELA files handled by the firm. This was done without any attempt to connect the services Browne may have actually performed with the accounts of clients for whom the work was done.[2]

It is undisputed that neither Perl nor Hunegs, as the attorneys who represented Rice and settled her fees dispute, respectively, ever informed Rice of her attorney's relationship with, and payments to, the insurance adjuster settling her claim. Rice had no knowledge of the Browne-Perl relationship until long after she signed both settlements and releases involved in this case. When Rice learned of this relationship, she initiated the instant suit claiming fraud, breach of fiduciary duty, and legal malpractice against the Perl defendants, civil conspiracy against all defendants, and negligent entrustment against Aetna.

This appeal comes by a procedural route which requires some explanation. After Rice filed the suit in early January, 1980, defendants answered in mid-to late January and simultaneously filed motions for summary judgment. One argument on these motions was heard before Judge Patrick W. Fitzgerald on February 1, 1980. At the

conclusion of this hearing, all counsel agreed to stipulate that all discovery then outstanding as between the parties would be stayed pending the court's decision on summary judgment. An order to this effect was circulated among counsel and filed under Judge Fitzgerald's signature on February 14.

In the three days preceding the summary judgment hearing, counsel appeared before Judge Fitzgerald numerous times to argue motions and to request assistance in the taking of depositions.

On January 29, Judge Fitzgerald simultaneously denied defendants' motion to quash depositions noticed by plaintiff for January 30 and 31, and denied Rice's motion to continue the summary judgment hearing scheduled for February 1 until such time as would permit a reasonable amount of discovery to be undertaken. No explanation was given for either ruling.

On January 30, Judge Fitzgerald fully disclosed, on the record, a long history of personal, social and professional relationships with the defendants and with several of the defense counsel. At this time, Rice's counsel requested Judge Fitzgerald to voluntarily disqualify himself. The judge refused, and Rice's counsel declined to file an affidavit of prejudice.

On February 15, while the case was under consideration, Rice again asked Judge Fitzgerald to disqualify himself to avoid the necessity for filing an affidavit of prejudice under Minn.R.Civ.P. 63.03. The judge permitted the filing of the affidavit, which this court approved on March 28, 1980. The case was then transferred to Judge Gordon L. McRae.

After hearing arguments on the issue, Judge McRae decided to resolve the summary judgment motions in reliance upon the record submitted to Judge Fitzgerald,

---

2. The issue of what services Browne actually performed for the Perl firm is in dispute. Perl defendants and Browne claim that he was hired as a consultant to prepare medical files for FELA cases, in which the firm specialized.

Rice claims that Browne and Perl were engaged in a secret scheme to settle Dalkon Shield cases *en masse.* No direct evidence has been produced thus far tending to prove either allegation.

rather than reopening the record for further discovery.[3]

Judge McRae disposed of the entire case by summary judgment. First, he found that Rice had "never expressed any dissatisfaction with the terms of the [A. H. Robins Co.] settlement agreement" and ruled that Rice had the burden of alleging damages. Since Rice had not met her burden, Judge McRae summarily dismissed all of the substantive claims which required proof of damages. Second, Judge McRae found that, whether or not damages are alleged, when an attorney fails to disclose to his client "all matters bearing upon the enforcement of her rights and * * * even whether to retain an attorney," the attorney has breached his fiduciary duty and forfeits attorneys' fees.

Because of our disposition of this case, we address only two issues:

(1) Did the Perl defendants breach their fiduciary duty to Rice? and,

(2) Did Judge Fitzgerald commit reversible error in failing to continue the summary judgment hearings to permit further discovery?

1. Perl defendants dispute both Judge McRae's holding that they were liable for a breach of fiduciary duty and his forfeiture of their attorneys' fees.

Judge McRae found that defendant Perl breached his fiduciary duty to Rice by failing to disclose to her that he and his firm were making payments to Browne, the claims adjuster responsible for her Dalkon Shield claim. The court, therefore, granted summary judgment to Rice on this issue. Perl should have disclosed this information, the court held, even assuming the veracity of defendants' explanation that Browne was hired as consultant only with respect to FELA cases handled by the Perl firm. The governing rule was stated by the court to be as follows: an attorney has a "duty to disclose any material matter bearing upon the attorney's duty to represent the client with undivided loyalty." Since Perl definitely failed to disclose his relationship to Browne, which the court deemed to be a "material matter," there was no genuine dispute as to any material fact and summary judgment was awarded plaintiff on this claim.

The Perl defendants dispute this finding on two grounds: (1) the court misinterpreted the relevant precedents to require a broader disclosure rule than exists in the law; and (2) even under the trial court's rule, defendants had no duty to disclose.

■ As to the first ground, Perl defendants are mistaken. The trial court's formulation of the disclosure rule is the dominant one in the United States:

The fiduciary obligations which are the premise of trust may be simply stated. The attorney is under a duty to represent the client with undivided loyalty, to preserve the client's confidences, and *to disclose any material matters bearing upon the representation of these obligations.* Although the phrasing of this definition of fiduciary obligations is varied and often dependent upon the context of particular circumstances, this rule exists in virtually every jurisdiction in the United States.

R. Mallen & V. Levit, *Legal Malpractice*, § 121 at 208 (2nd ed. 1981) (emphasis added). *See Baker v. Humphrey*, 101 U.S. 494, 501, 25 L.Ed. 1065, 1067 (1880) ("It is the duty of an attorney to advise the client promptly whenever he has any information to give which it is important the client should receive."); *see also* 7A C.J.S. § 237; Mallen & Levit, *supra* § 125 at 218. As this court stated in *Selover v. Hedwall*, 149 Minn. 302, 306, 184 N.W. 180, 181 (1921), "[i]t is the undoubted duty of an attorney to communicate to his client whatever information he obtains that may affect the interests of his client in respect to the matters intrusted to him." (Citing *Baker v. Humphrey*).

---

**3.** We note, at this point, that when a judge is removed from a case on the grounds of actual bias, the succeeding judge has the inherent discretionary power to review all of the disqualified judge's rulings.

■ Perl defendants also argue that, even under this standard, they were under no obligation to disclose to Rice the existence of their non-adversary relationship with Browne. Here too, the Perl defendants are incorrect. The existence of the "business relationship" created, at the very least, a substantial appearance of impropriety with respect to Perl, and a serious conflict of interest for Browne. A reasonable client would certainly wish to know, and has a right to this information, before proceeding with settlement negotiations. If Rice had known, she could have decided to engage another attorney to represent her, or might have decided not to go forward at all. The potential risks to her could be serious. If Aetna later rescinded the agreement, Rice's reputation might suffer simply from having been a party, albeit an innocent party, to this arrangement. She was unfairly put in some jeopardy by her fiduciary. An attorney has an obligation to prevent placing his client in a position which might well taint a settlement transaction. The profession's standards of integrity demand no less.

Perl defendants next argue that Judge McRae's forfeiture of attorneys' fees was improper for two reasons: (1) because plaintiff failed to allege that she suffered any damages due to Perl's failure to disclose; and (2) because the nondisclosure was unintentional.

■ This court has repeatedly stated that an attorney (or any fiduciary) who breaches his duty to his client forfeits his right to compensation. In *In re Estate of Lee*, 214 Minn. 448, 460, 9 N.W.2d 245, 251 (1943), this court stated:

It is equally well settled that an attorney at law who is unfaithful in the performance of his duties forfeits his right to compensation. An attorney is an officer of the court, sworn to aid in the administration of justice and to act with strict fidelity to both his clients and the courts. Unquestioned fidelity to their real interests is the duty of every attorney to his clients. When a breach of faith occurs, the attorney's right to compensation is gone.

*Accord, Faber v. Enkema*, 180 Minn. 493, 231 N.W. 410 (1930). Furthermore, "[t]hese consequences follow even though the principal, ignorant of the duplicitous agency, cannot prove actual injury to himself or that the agent committed an intentional fraud." *Anderson v. Anderson*, 293 Minn. 209, 216, 197 N.W.2d 720, 724 (1972). *See also* Mallen & Levit, *supra* § 124 at 217 (intent or motives of attorney are irrelevant to finding breach of his fiduciary obligations).

Defendants correctly note that these cases all involved overt wrongful conduct. Yet, the law has traditionally been unyielding in its assessment of penalties when a fiduciary, or trustee, or agent has breached any of his obligations. The underlying policy is a strong one. It recognizes that insuring absolute fidelity to the principal's (or beneficiary's) interests is fundamental to establishing the trust necessary to the proper functioning of these relationships.

■ We hold that the summary judgment against attorney Perl individually and the Perl firm for breach of fiduciary duty, and the forfeiture of attorneys' fees, is affirmed.

2. On January 29, three days prior to the scheduled hearing date for the summary judgment motions, Judge Fitzgerald heard arguments and denied Rice's motion for a continuance until such time as reasonable discovery could be completed. No explanation was given by the judge. Rice argues that she was thereby severely prejudiced by her inability to develop the factual background of her case. Rice had only two days in which to obtain depositions with no real opportunity to engage in the other aspects of discovery. Defendants argue, on the other hand, that totally adequate discovery was permitted by the judge; that the parties fully argued and briefed the issues before Judge Fitzgerald; and that an immediate motion for summary judgment was necessary because of the serious harm that each defendant was suffering to his reputation from the publicity surrounding the case.

Rice sought a continuance under Minn.R. Civ.P. 56.06.[4] Her attorney submitted an affidavit in which he asserted that the time between service of defendants' answers and the scheduled hearing date was insufficient to secure all of the necessary depositions and affidavits of witnesses. He further stated that much of the evidence was in the possession of the Perl defendants and would therefore be difficult to obtain, asserting also that several witnesses were unwilling to provide affidavits, although they had agreed "to speak to Rice."

■ While it is true that the trial judge has great discretion to determine the procedural calendar of a case, under rule 56.06 (and Federal rule 56(f) after which it is patterned) such continuances should be liberally granted. This is especially true when the party seeking the continuance is doing so because of a claim of insufficient time to conduct discovery. As stated in 2 J. Hetland & O. Adamson, *Minnesota Practice* 588, (1970);

> Normally the court will grant additional time to the nonmoving party to obtain the facts if the reason is a matter of insufficient time. A continuance or permission to engage in further discovery should not be denied to a party except in the most extreme circumstances. * * * As a practical matter, the court should be liberal in granting additional time for purposes of preparing affidavits or discovery if a party has any real reason to believe that facts can be established by such means.

*Accord,* 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2741 at 731 (1973). ("A major objective of subdivision (f) has been to insure that a diligent party is given a reasonable opportunity to prepare his case.").

Given this presumption in favor of granting continuances to allow sufficient time for discovery, we focus on two questions:

(1) Has plaintiff been diligent in obtaining or seeking discovery prior to its Rule 56.06 motion? and

(2) Is plaintiff seeking further discovery in the good faith belief that material facts will be uncovered, or is she merely engaging in a "fishing expedition?"

Addressing the second question first, "[t]he court should be quite strict in refusing continuances where the party merely expresses a hope or a desire to engage in a fishing expedition either by discovery or at the time of trial." Hetland & Adamson, *supra* at 588. *See also Vosbeck v. Lerdall,* 245 Minn. 164, 167–68, 72 N.W.2d 371, 374 (1955). Defendants cite in the complaint allegations which assert misdeeds by the defendants that go far beyond any attempt to limit the claim to specific wrongdoings against plaintiff Rice. On the other hand, Rice alleges that a conspiracy or continuous course of conduct occurred which makes such inquiry relevant to Rice's specific claims, and that much of the information relevant to that claim is in the possession of defendants who will not part with it voluntarily.

Sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party as is often true in fraud or private antitrust cases. Indeed, the majority of the continuances granted under Rule 56(f) involve cases in which one party has exclusive knowledge of the relevant facts. * * * [I]t probably is felt that granting a continuance in these situations is appropriate because extracting information from an opposing party may be a more difficult process than obtaining information from a disinterested source. Wright & Miller, *supra* § 2741 at 733–34. Given these factors, we find that Rice survives the "fishing expedition" inquiry.

The diligence question is vigorously contested. Defendants claim that plaintiff has

---

4. Rule 56.06 states:

   Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present, by affidavit, facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

been deliberately dilatory, has had sufficient time to fully conduct discovery, and has done so. Rice argues that defendants stampeded her into disposition by summary judgment.

Rice served her complaint by mail on defendant Browne on December 30, 1979, on Perl defendants on January 2, 1980, and on defendant Aetna on January 11, 1980. Defendants served their answers, with motions for summary judgment attached, by mail about two weeks later. The relevant date is January 18 when the Perl defendants, the first defendants to reply to the complaint, mailed their answer and motion. The hearing was set for February 1 which was the first date at which the motion could be heard under Minn.R.Civ.P. 56.03 (10 days after notice of motion is served) and 6.05 (3 days added when service is made by mail). Rice thereupon served by mail her motion for continuance on Thursday, January 24. (At the same time plaintiff served her first set of interrogatories on each of the defendants and notice the depositions of the seven persons who were deposed on January 30 and 31). The following Tuesday, January 29, Judge Fitzgerald heard and denied the motion for continuance.

This extended chronology, in our view, supports the claim that plaintiff was inappropriately hurried and was not in fact dilatory. As soon as plaintiff received the first answers and notice of summary judgment motion from defendants, she moved for a continuance.[5] She also served her interrogatories and notices of depositions immediately upon receipt of defendants' answer. These are not dilatory tactics at a time when the suit was begun only 13 days earlier.

It is difficult to prove fraud and conspiracy without assessing all of the circumstantial evidence. *See Scheele v. Union Loan & Finance Co.*, 200 Minn. 554, 563–64, 274 N.W. 673, 678 (1937). This, of necessity, takes time, and two days of discovery is certainly not enough.

Finally, defendants argue that Rice waived her rights to further discovery by stipulating to the stay of discovery at the conclusion of the summary judgment hearing. A reading of the transcript reveals that Rice did no more than formally agree to an arrangement which had already been made. By denying the motion for a continuance, and by informing the parties prior to their stipulation that he was going to take the case under submission, Judge Fitzgerald left no doubt that further discovery would not be considered by him while he was deciding the summary judgment motions. We therefore find that it was error for Judge Fitzgerald to deny adequate discovery prior to that hearing. However, the evidence dealing with the likelihood of recovery is such that we are persuaded the amount which plaintiff received in settlement was substantially equivalent to what she might have received had attorneys' fees been deducted from such recovery. Under these circumstances we hold that the interests of justice do not require a new trial and are better served by bringing these protracted and acrimonious proceedings to a conclusion without the delay, expense, and uncertainty of further litigation. Accordingly the judgment is affirmed.

Affirmed.

KELLEY, J., took no part in the consideration or decision of this case.

5. It is noteworthy that the other defendants did not serve their answers, with notices of summary judgment motions, until January 25 (Aetna) and January 29 (Browne).