**TRENTI, SAXHAUG, BERGER, ROCHE, STEPHENSON, RICHARDS & ALUNI, LTD., Respondent,**

v.

**James NARTNIK, Appellant.**

No. C3–88–2195.

Court of Appeals of Minnesota.

May 9, 1989.

Review Denied July 12, 1989.

J. Carver Richards, Trenti Law Firm, David T. Stall, Virginia, for respondent.

Mark D. Streed, Meshbesher, Singer & Spence, Ltd., Minneapolis, for appellant.

Heard, considered and decided by RANDALL, P.J., and KALITOWSKI and SCHULTZ,* JJ.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## OPINION

RANDALL, Judge.

The law firm of Trenti, Saxhaug, Berger, Roche, Stephenson, Richards & Aluni, Ltd. brought an action against James Nartnik to recover attorney fees and costs the firm expended on Nartnik's behalf. In granting judgment for the Trenti firm and awarding the reasonable value of services, the trial court determined that the firm was entitled to reasonable compensation based on a theory of quantum meruit after Nartnik discharged counsel from a contingent fee agreement. Nartnik appeals from the judgment. We affirm.

## FACTS

In November, 1984, Nartnik consulted the Trenti firm about personal injuries he sustained in a truck roll-over accident. The Trenti firm, through attorney J. Carver Richards (Richards), agreed "to assume professional responsibility" for pursuing Nartnik's personal injury claims and agreed "to charge no fee" if they were unsuccessful. In the event the Trenti firm was able to effect a recovery by suit or by settlement with Nartnik's consent, Nartnik agreed "to pay [the] TRENTI [firm] * * * as compensation for their services" one-third of any amounts recovered plus all costs incurred. A retainer agreement was signed by Nartnik and Richards, witnessed by a third person and dated November 17, 1984. (The one-third retainer agreement used was a standard contingent fee contract in common use.)

Richards began pursuing Nartnik's personal injury claims. By January 1985, he had brought suit and completed most of the discovery. Thereafter, Richards was awaiting the stabilization of Nartnik's injuries before proceeding further. At this point, the Trenti firm had advanced 44.4 hours of Richards' services and $939.68 of out-of-pocket expenses. (Internally, the Trenti firm valued and recorded the contingent fee services Richards performed at an hourly rate of $85.)

During the time that the Trenti firm represented Nartnik on the personal injury claim, Nartnik was also charged with two misdemeanor driving offenses. Richards agreed to represent Nartnik in connection with these matters, and ultimately obtained dismissal of both charges. It is not disputed that had Richards been on a standard fee basis for the two misdemeanors, the $272.25 for attorney fees and costs he charged would be de minimus relative to the quality of his services.

On December 17, 1985, Nartnik was arrested and charged with felony theft along with three other defendants. Initially, Richards appeared on behalf of Nartnik and the other defendants at their first appearance. Richards reviewed the state's investigation reports and discussed with Nartnik his involvement. He came to the belief that Nartnik, who was only 18 years old (the other defendants were all in their 40's), was the least culpable of the four. Richards knew the prosecuting attorney and thought he might be able to quickly negotiate a plea bargain beneficial to Nartnik.

After conferring with the court and the state following arraignment on January 14, 1986, Richards learned that the state intended to prosecute Nartnik as thoroughly on all charges as the others. Richards recognized that Nartnik might end up having to testify against the other defendants in order to obtain a lenient sentence. He then properly advised all four that he could no longer represent them on the felony charges. Richards referred Nartnik to another attorney. Nartnik subsequently hired the Minneapolis law firm of Meshbesher, Singer & Spence, Ltd. The other three defendants openly requested that Richards continue to represent them, and that joint representation was subsequently taken under consideration and approved by the district court.

Richards spent 4½ hours on Nartnik's felony defense representation. Although Richards kept a record of his time on Nartnik's felony for office purposes, his short representation was performed as a favor to Nartnik and not with the expectation of compensation, since at this time Richards still had control of the personal injury case.

Nartnik advised Richards by letter dated January 31, 1986, that he was "terminating your services handling my lawsuit involving my accident." The letter stated that Nartnik had retained Richard Cesario of the Meshbesher firm and requested that Cesario be sent the personal injury file. In the letter, Nartnik thanked Richards for the "professional services you have given me from time to time."

Following the termination, the Trenti firm computed its services for Nartnik on the personal injury and the misdemeanor cases on an hourly basis and brought this action against Nartnik in August 1986 to recover attorney fees and expenses. After a trial on the merits to the court, judgment was entered for the firm on August 5, 1988, in the amount of $5,835. Nartnik appeals from the judgment and from the denial of his motion for a new trial.

## ISSUES

1. Did the trial court err in determining that respondents' quantum meruit action became timely when appellant discharged them from the contingent fee agreement?

2. Did the trial court err in rejecting appellant's forfeiture defense?

## ANALYSIS

On appeal, Nartnik claims the judgment was affected by errors of law because the trial court determined that (a) the Trenti firm was entitled to recover the reasonable value of its services on a quantum meruit basis "at the moment they were discharged by Nartnik as his attorney in the personal injury lawsuit," and (b) the felony representation of Nartnik by the Trenti firm was not relevant to the present action. On questions of law, appellate review is de novo. *Doe v. Minnesota State Board of Medical Examiners*, 435 N.W.2d 45, 48 (Minn.1989).

### I

*Timeliness of lawsuit for fees based on quantum meruit*

Nartnik argues that the Trenti firm is not entitled to the reasonable value of their services until he actually *receives* a recovery on his personal injury suit. As no recovery has been obtained to date, Nartnik contends the present action is premature. The Trenti firm, on the other hand, argues that since they were discharged from a contingent fee agreement and thus cannot recover the specified percentage when the case is eventually concluded, the legal right to sue for the reasonable value of their time matures at discharge just like other properly discharged but unpaid workmen. The Trenti firm argues that the reason attorneys on contingent fee contracts agree to wait until the case is over is that a contingent fee attorney is paid a percentage portion of the settlement or verdict. The reason to wait and take a chance on no fee at all disappears when the client has discharged the contingent fee attorney. At that point, the discharged attorney is entitled only to bill for the reasonable value of hourly services, usually a sum far less than the possible amount that would be obtained as a fee when calculated as a percentage of the recovery.

The question concerning when a discharged attorney's entitlement to a quantum meruit recovery becomes timely is one of first impression. It is accepted that a client may discharge an attorney with or without cause and employ new counsel. *Lawler v. Dunn*, 145 Minn. 281, 284, 176 N.W. 989, 990 (1920), *cited in Krippner v. Matz*, 205 Minn. 497, 504, 287 N.W. 19, 23 (1939). The Trenti firm does not dispute this. It is also recognized that upon the discharge of an attorney, the client is liable for payment of services rendered. *Id.;* Minn.R.Prof.Conduct 1.16 comment, Discharge. Nartnik does not dispute that he owes the money, but claims that he should be able to wait until the personal injury case is settled before having to pay.

After discharge, an attorney is entitled to recover only the reasonable value of services on the theory of quantum meruit, not on the theory of breach of contract based on the terminated contingent fee agreement. *Lawler*, 145 Minn. at 284–85, 176 N.W. at 990 (quoting *Martin v. Camp*, 219 N.Y. 170, 174, 114 N.E. 46, 48 (1916)).

Minnesota has not yet ruled on whether an attorney seeking quantum meruit recovery for services performed may sue *before* the former client receives a recovery on the action the attorney brought on a contingent fee basis.[1] We can look to *Casebolt v. Mid–Continent Airlines, Inc.,* 85 F.Supp. 915 (D.Minn.1949) (federal court applied Minnesota law in holding that discharged attorney was entitled to reasonable value of services rendered, although claim not yet finally determined and no recovery made) for some guidelines.

■ When the Trenti firm was discharged from representing Nartnik on his personal injury action, the contingent fee agreement was terminated, not breached. *See Lawler,* 145 Minn. at 285, 176 N.W. at 990. The rule in Minnesota is that upon termination of an attorney contingency compensation contract, the client will not be liable for the agreed contract price (here the 33⅓ contingency). *Lawler,* 145 Minn. at 285, 176 N.W. at 990. Thus, when a client exercises the legal right to terminate the contract, the compensation terms of the contract become unenforceable. *See id.* at 284–85, 176 N.W. at 990. We think it necessarily follows that if the attorney cannot enforce the monetary terms of the terminated contingency fee contract, then neither should the client be able to string out the time for payment until the lawsuit is settled by another law firm.

■ When Nartnik terminated the firm's right to the agreed contract price (one-third of recovery, plus costs), he also terminated his contractual right to defer compensating the firm until a recovery was obtained on the personal injury action. As there is no evidence that the parties entered into any other agreement to defer compensation, we agree with the trial court that the Trenti firm's entitlement to a quantum meruit recovery became timely upon termination by Nartnik of this representation. Once a contingent fee agreement is terminated by the client, the attorney, like any workman or supplier, is entitled to prompt payment for the reasonable value of services performed.

## II

### Fee Forfeiture Defense

■ Nartnik contends that Richards breached his fiduciary duty to Nartnik by failing to disclose that the Trenti firm may have a conflict of interest in representing multiple defendants in the felony proceedings. Nartnik claims that as a result of that breach, his "confidence in Richards was broken," and he "felt he had no choice but to seek new representation *for all of his legal problems.*" Nartnik maintains that the breach on the felony representation extended to the personal injury and misdemeanor representation. He argues that under *Rice v. Perl,* 320 N.W.2d 407 (Minn.1982), the Trenti firm is required to forfeit all fees for work performed on the personal injury claim and on the misdemeanor defense. The trial court rejected Nartnik's fee forfeiture defense, finding it not relevant. Even if the question of forfeiture was relevant, in a memorandum accompanying its order, the trial court determined that representation of multiple criminal defendants is not "a per se breach of any 'fiduciary' responsibility,"

In *Rice,* the supreme court held that attorney Perl breached his fiduciary duty to a client by *failing to disclose* his non-adversarial business relationship with the claims adjuster with whom he negotiated the client's settlement. *Id.* at 410–11. The court determined that Rice was "unfairly

---

1. Nartnik argues that this court in *Murphy v. Bergo,* 400 N.W.2d 387, 389 (Minn.Ct.App.1987) "recognized that a discharged attorney * * * is entitled to his fair share of attorne[y] fees '[i]f a recovery is obtained' on the claim." However, *Murphy* did not involve an attorney suing a former client for compensation. The case turned on issues of custody and the proper party to maintain an action on behalf of a minor. The trial court dismissed one of two actions initiated on behalf of the minor child. This court merely recognized that the attorney affected by the dismissal was entitled to enforce the terms of his employment contract upon the event of a recovery. *See Weikert v. Blomster,* 213 Minn. 373, 6 N.W.2d 798 (1942) (attorney not discharged by client from a contingent fee contract is entitled to enforce contract terms against client's recovery).

put in some jeopardy" by her attorney's nondisclosure. *Id.* "If Rice had known [of her attorney's relationship with the claims adjuster], she could have decided to engage another attorney to represent her, or might have decided not to go forward [with the settlement] at all." *Id.* Thus, because attorney Perl had not represented the client with undivided loyalty on the matter for which he was retained, the court concluded that public policy required the law firm to forfeit fees. *Id.*

In this case, the record reveals no such nondisclosure of any duty owed to Nartnik by Richards. Nartnik does not even dispute that Richards was acting in Nartnick's best interest when he attempted to quickly negotiate Nartnik's felony charge into a beneficial plea bargain. Richards, upon learning that a quick resolution to Nartnik's felony charge was unlikely, and properly surmising that Nartnik might have to testify against co-defendants to get a lenient sentence, promptly disclosed the potential conflict to all four defendants. Richards encouraged Nartnik and the others to retain separate counsel. Richards even made arrangements for Nartnik to be represented by another attorney.

There is no indication Richards failed to provide Nartnik with "the honest advice and zealous performance to which a client is entitled." *Perl v. St. Paul Fire & Marine Insurance Co.,* 345 N.W.2d 209, 213 (Minn.1984). In direct response to a question from this panel at oral argument, Nartnik's counsel conceded that Nartnik's felony charge was not prejudiced by Richards' initial representation of Nartnik and later withdrawal. We determine that no breach of any fiduciary duty to Nartnik by Richards occurred in Nartnik's felony representation.

We note, as an aside, that the claimed breach of duty, if any, was on the felony matter. Nartnik agrees that Richard's representation on the personal injury matter up to the time it left his hands was proper. Yet, Nartnik argues that the alleged breach of duty on the felony should spill over and require the Trenti firm to forfeit all attorney fees on the unrelated personal injury matter and the unrelated misdemeanor defense. We note that even if there had been a breach of fiduciary duty on the felony matter, which we do not find, we find no law stating that a breach on an unrelated matter spills over and prevents an attorney from collecting fees reasonably earned for services on other matters that were properly performed.

In summary, Richards obtained the dismissal of Nartnik's two misdemeanor charges. The quality of his representation on the personal injury action and the two misdemeanors is not contested. Richard's work for Nartnik on the felony did not prejudice Nartnik's case. The trial court did not err by rejecting Nartnik's fee forfeiture defense.

## DECISION

The trial court properly awarded the Trenti firm the reasonable value of their services and out-of-pocket costs calulated on a quantum meruit basis. The trial court properly rejected Nartnik's argument that the firm could not sue for quantum meruit until another law firm had completed the personal injury action. The trial court properly rejected Nartnik's fee forfeiture defense.

Affirmed.