Roscoe HOLMES, Appellant,

v.

WINNERS ENTERTAINMENT, INC., Defendants,

Lance W. Riley, et al., Respondents.

No. C5–94–2210.

Court of Appeals of Minnesota.

May 16, 1995.

---

John A. Fabian, Nichols, Kaster & Anderson, Minneapolis, for appellant.

Kay Nord Hunt, Stephen C. Rathke, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondents.

Considered and decided by NORTON, P.J., SCHUMACHER, and MANSUR,* JJ.

## OPINION

NORTON, Judge.

Appellant Roscoe Holmes is a former shareholder, director, officer and employee of respondent Golden Palace Casinos, Inc. Holmes challenges the district court's dismissal of his legal malpractice claim against respondent Lance W. Riley and his law firm for negligence in connection with legal advice provided to Golden Palace. We affirm.

## FACTS

Appellant Roscoe Holmes was one of five founders and equal shareholders of Glenn Hall & Associates, Inc. (GH & A)[1], a company formed in March 1991, to manage the Treasure Island Casino, a gaming facility owned by the Prairie Island Indian Community. Each founder paid $20 and received 20 shares of common stock. The five founders comprised the corporate board of directors of GH & A.

Respondent Lance Riley drafted a management agreement between GH & A and the Prairie Island Indian Community for the management of the Treasure Island Casino. Riley provided legal advice to GH & A when it executed the management agreement with Prairie Island Indian Community on April 9, 1991.

The management agreement with the Prairie Island Indian Community stated that it was to be "consistent with and subject to Federal laws and BIA regulations promulgated thereunder, specifically including PL 100-497," which is the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701-2721

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. Glenn Hall & Associates changed its name to Golden Palace Casinos, Inc. in the later part of 1991.

(1988). The IGRA requires that gaming management contracts be approved by the Chairman of the National Indian Gaming Commission. 25 U.S.C. § 2710(d)(9). Approval by the Secretary of the Interior is also required. 25 U.S.C. § 81 (1988). Before that approval took place, GH & A began managing the Treasure Island Casino.

By letter dated May 22, 1991, a BIA official informed the Prairie Island Indian Community about various flaws in the management agreement. On July 12, 1991, the tribal counsel terminated the management agreement and refused to pay an outstanding balance owed GH & A. A tribal member, Dale Childs, then brought a *qui tam* action against GH & A and the five founding shareholders to recover all compensation paid to GH & A under the management agreement.[2] By that time, GH & A had changed its name to Golden Palace Casinos, Inc. Riley's law firm, respondent Riley & Bergquist, P.A., represented Golden Palace and the founding shareholders in this action. The Riley & Bergquist retainer agreement specifically stated:

> You have engaged our firm * * * to give you legal advice and assistance in defending the Childs Claim. You have not engaged the firm to represent you generally or regarding any other legal matters except those matters specifically engaged.

The federal district court entered judgment of $280,264.43 against Golden Palace and the five founding shareholders. An appeal followed and the parties eventually settled; Golden Palace paid the entire settlement figure. Holmes kept whatever compensation he had received as casino manager prior to cancellation of the management agreement.

After resigning his position as an officer and board member and later being fired as an employee, Holmes brought this lawsuit against respondent attorneys, and also against Golden Palace, its successor, and those founding shareholders. The claims against the other parties were dismissed by stipulation. The claims against Riley and Riley & Bergquist were for breach of fiduciary duty, fraud, misrepresentation, tortious interference with his employment contract, and legal malpractice. The district court granted summary judgment to Riley and Riley & Bergquist. Holmes then brought this appeal, but has only challenged the district court's grant of summary judgment against him on his legal malpractice claim. Specifically, he contends that respondents committed malpractice in their representation with respect to GH & A's management agreement with Prairie Island Indian Community.

## ISSUES

1. Did the district court err in determining that appellant, a former shareholder and corporate officer, lacked standing to bring a claim of legal malpractice against an attorney and his law firm for advice and services they rendered to the corporation?

2. Did the district court abuse its discretion in deciding not to continue the summary judgment hearing to allow appellant further discovery?

## ANALYSIS

### 1. Summary Judgment.

On appeal from summary judgment, this court's role is to review the record to determine if any genuine issues of material fact exist and if the district court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). This court must review the evidence in a light most favorable to the party against whom summary judgment was granted. *Id.*

The district court determined that Holmes had failed to establish a prima facie case of legal malpractice under either a contract or tort theory of attorney/client relationship. *Cf. TJD Dissolution Corp. v. Savoie Supply Co.*, 460 N.W.2d 59, 62 (Minn.App.1990) (shareholder in closely-held corporation did not have attorney/client relationship under

---

**2.** The *qui tam* action was authorized by 25 U.S.C. § 81 (1988), which permits a third party to bring a civil suit to recover monies paid under a contract with an Indian tribe where the contract was made without approval of the Secretary of the Interior and the Commissioner of Indian Affairs. *See Black's Law Dictionary* 1126 (5th ed. 1979) (defining *qui tam* action).

either a contract or tort theory with corporation's attorney who was also secretary to the corporation's board). Holmes does not challenge this decision; he concedes that he failed to show evidence to establish an attorney/client relationship. Instead, he contends that the district court erred in determining that he failed to establish a claim for legal malpractice as a nonclient.

An attorney may be held liable to a nonclient when "the client's sole purpose in retaining an attorney is to benefit directly [that] third party." *Marker v. Greenberg*, 313 N.W.2d 4, 5 (Minn.1981). The third party "must be a direct and intended beneficiary of the lawyer's services." *Id.* (quoting *Brody v. Ruby*, 267 N.W.2d 902, 906 (Iowa 1978)). Courts frequently apply this exception to the strict privity requirement in probate proceedings when an attorney's negligent act has caused an intended beneficiary to lose a bequest. *Id.* We refuse to extend this exception here to a shareholder's claim of malpractice brought against attorneys retained by the corporation.

With regard to the management agreement with the Prairie Island Indian Community, Riley represented the corporation, not Holmes individually. The management agreement expressly benefitted the corporation and did not name Holmes.

We find no merit to Holmes' claim that his position as a founding shareholder, his inclusion in a shareholder agreement and his employment status demonstrate beneficiary status under the narrow exception for nonclient attorney malpractice claims. Holmes admitted in his deposition that he did not play a part in retaining Riley and his law firm; the retainer agreement was signed only by Hall. Holmes contends that his personal guarantee for payment of attorney services demonstrates he was an intended beneficiary of attorney services, but the record shows that only Glenn Hall signed a personal guarantee for those services.

Holmes also argues that he was a direct beneficiary of the management agreement and respondents' services because he was named individually in the *qui tam* action brought after cancellation of the manage-

ment agreement and because respondent Riley & Bergquist represented both the corporation and him individually in that action. This connection is not sufficient. By its terms, the management agreement was intended to bind and benefit the corporation. The naming of the founding shareholders in a suit to recover monies paid to the corporation under the management agreement was merely a prudent act by the plaintiff to seek full recovery; it is not evidence that the management agreement or the attorney services in negotiating that agreement were intended to benefit Holmes directly as a shareholder and officer of the corporation. Significantly, the corporation, not the shareholders, paid the entire settlement in the *qui tam* action. Respondents' representation of Holmes was expressly limited to his defense in the *qui tam* action.

The benefit to Holmes was incidental to his status as a shareholder, officer and employee. The benefit flowed through the corporation to Holmes as only one of five shareholders and as an employee. We hold that the benefit to Holmes from respondents' services was not "direct," as required by *Marker*, 313 N.W.2d at 5. The district court's grant of summary judgment against Holmes was correct.

## 2. Discovery.

Holmes contends that the district court prematurely granted summary judgment on his legal malpractice claim because he had not completed discovery. We disagree. The trial court has "great discretion to determine the procedural calendar of a case"; the court should be strict in refusing a continuance when discovery would merely be a "fishing expedition." *Rice v. Perl*, 320 N.W.2d 407, 412 (Minn.1982).

There is little likelihood that additional discovery would supply evidence to support Holmes' attorney malpractice claim. The court had considerable documentary evidence and deposition testimony of Holmes and another founding shareholder upon which to base its decision. Holmes failed to demonstrate that a deposition of Riley and his law partner would be more than a "fishing expedition." *Id.* Further, Holmes' timing of dis-

covery requests showed a lack of diligence. *See id.* at 412–13 (in deciding whether to grant continuance to permit further discovery, court considers party's diligence in seeking discovery prior to motion). Holmes did not give notice of the depositions of Riley and his law partner until eight months after commencing his lawsuit and almost three months after respondents began deposing Holmes. Respondents had completed the deposition of Holmes and three other witnesses almost two months before Holmes served any deposition notices. On this record, the district court's decision not to continue the summary judgment hearing was not an abuse of discretion.

## DECISION

The district court properly granted summary judgment on the ground that no attorney/client relationship existed and that appellant, a corporate officer and shareholder, could not bring a malpractice claim against the corporation's attorneys under the narrow exception afforded to nonclients who are the direct and intended beneficiary of attorney services.

**Affirmed.**