Cecil Wayne LOCKLEY and Mary Jane Lockley (Carter)
*v.* B. Michael EASLEY

89-323                                              786 S.W.2d 573

Supreme Court of Arkansas
Opinion delivered April 2, 1990

*Killough, Ford & Hunter*, by: *Robert M. Ford*, for appellant.

*Easley & Hicky*, for appellee.

STEELE HAYS, Justice. Appellants Cecil Lockley and Mary Jane Carter divorced in 1981. Mrs. Carter has remarried. In May 1988 Mrs. Carter consulted attorney Michael Easley in connec-

tion with an arrearage in moneys due her under a property settlement with Mr. Lockley providing for child support, alimony and payments for her interest in unspecified personal property. Mr. Lockley had paid nothing to Mrs. Carter except child support since 1983 and the arrearage exceeded $20,000. Mrs. Carter was unable to pay a fee or costs and she and Mr. Easley verbally agreed on a contingent fee of one-third of any amount collected.

When Mr. Easley petitioned for an order to show cause, Mr. Lockley obtained counsel and two cash settlement offers were forthcoming, the first for $4,000 and the second for $6,000. Both offers were rejected.

While the case was in that posture Mrs. Carter contacted Mr. Easley to instruct him to dismiss the petition to show cause. He advised her against dismissing the petition but followed her instructions and on September 19, 1988, the petition was dismissed. Mr. Easley billed Mrs. Carter for $297.50 for services rendered based on his estimate of time invested. The statement was not paid until some months later after suit was filed in small claims court.

After the petition was dismissed Mr. Easley learned that Mr. Lockley had paid Mrs. Carter $6,000 and that on September 30, 1988, Mrs. Carter and Mr. Lockley had signed an agreement in the office of Mr. Lockley's attorney releasing Mr. Lockley of all sums due Mrs. Carter under the property settlement agreement.

Mr. Easley then petitioned the court for judgment and an attorneys lien against Mr. Lockley and Mrs. Carter pursuant to Ark. Code Ann. §§ 16-22-301 — 310 (1989). During the hearing, counsel for Mr. Lockley moved that the petition be dismissed as to Lockley because no cause of action was stated and because there was no proof of any contractual agreement, express or implied, by which Lockley was indebted to Easley for an attorney's fee. Mrs. Carter joined in the motion to dismiss.

The chancellor heard testimony from all parties, took the case under advisement, and later issued a memorandum opinion denying the motions to dismiss and awarding a judgment for $2,000 against Carter and Lockley based on the contingent fee agreement. On appeal Mrs. Carter and Mr. Lockley contend that the chancellor erred, first, by not sustaining their motions to

dismiss and, second, by awarding a judgment pursuant to the contingent fee agreement. We find no merit in either point.

Appellants argue that because the petition to show cause had been dismissed and Mr. Easley had been discharged by Mrs. Carter, the oral contingent fee agreement was ended and since Mrs. Carter had ultimately paid the quantum meruit fee of $297.50 she was under no further obligation to Mr. Easley.

Appellants contend the $6,000 offer was rejected, not by Mrs. Carter, but by Mr. Easley. But the import of Mrs. Carter's testimony is that when Mr. Easley informed her of the offers and told her that he had rejected them, that she had tacitly concurred in that course of action. Under questioning by Mr. Easley, Mrs. Carter testified:

> Q: Do I understand that you are now being critical of me for trying to get for you what you came in and asked me to get for you?
>
> A: No sir.
>
> Q: Do I understand that you told me when I was asking you questions the first time that you did not want the $6,000.00, that you wanted more?
>
> A: No sir, I didn't say that. You said I declined it and I said okay, just like that right there.
>
> Q: And you did not disagree with that action, did you?
>
> A: No I didn't.

The gist of appellants' argument is that the $6,000 payment to Mrs. Carter was not linked to the release of her claims under the property settlement agreement, that the two incidents occurred independently. Appellants point out that the petition was dismissed on September 19, whereas the payment and release did not occur until some ten days to two weeks later. Mrs. Carter testified that she decided to drop the case at the urging of her son and not because of the $6,000. Mr. Lockley's testimony tended to corroborate hers in that he said he decided "to do what was right" after Mrs. Carter's petition was dismissed. The inference we are asked to draw is that these two circumstances—the payment of the $6,000 and the full release of all obligations on Mr. Lockley

under the property settlement—were merely coincidental.

But whether there was an explicit agreement between Mr. Lockley and Mrs. Carter need not concern us. The circumstances are entirely sufficient for the chancellor to conclude, as he did, that there was a correlation between the $6,000 payment and the release from which it can be assumed that there was an implicit understanding between the parties. That is the direct implication of the chancellor's findings and we cannot say those findings were clearly against the preponderance of the evidence. ARCP Rule 52. Mr. Lockley had paid nothing toward alimony or personal property for some five years until Mrs. Carter sought legal counsel, at which point he offered $4,000 and then $6,000. Additionally, Mr. Lockley wrote the word "Settlement" on the face of the $6,000 check—a clear indication the payment was not merely gratuitous.

Turning to the remaining point the argument is that Mrs. Carter is the only person from whom Michael Easley could claim a contingent fee and that when her case was dismissed the only fee allowable was one of quantum meruit. Further, since Easley had sued in small claims court and Mrs. Carter had paid $297.50, the amount sued for, that too was no longer owing.[1] But the chancellor found that Easley had submitted the statement for $297.50 in good faith and before he discovered the facts concerning the payment and settlement, and concluded that his rights under the contractual agreement with Mrs. Carter could not be thereby defeated. We believe that was correct and appellants have not cited authority requiring a different result.

Appellants rely on *Henry, Walden & Davis* v. *Goodman*, 294 Ark. 25, 741 S.W.2d 233 (1987), for the contention that, having been discharged by Mrs. Carter, appellee is not entitled to a contingent fee against either appellant. In *Goodman* this court limited an attorney who had been discharged by the client to a quantum meruit fee. But subsequent to that decision Act 293 of 1989 became the law [Ark. Code Ann. §§ 16-22-301 through 307 (1989)]. Act 293 expressly declares the holding of the *Goodman* case to be inconsistent with the legislative intent

---

[1] The chancellor gave Mrs. Carter credit for payment of $297.50 against the judgment.

behind the Attorneys Lien Law. The act explicitly provides that attorneys may rely on their contractual rights with clients and are entitled to obtain a lien for services based on such agreements. The Attorneys Lien Law also provides that, under appropriate circumstances, the lien may be enforced not only against the client but against anyone, including another attorney, who knowingly settles with an opposing litigant without the consent of the attorney. Being remedial legislation, Act 293 is not confined to prospective operation. *Forrest City Machine Works* v. *Aderhold,* 273 Ark. 33, 616 S.W.2d 720 (1981); *Harrison* v. *Matthews*, 235 Ark. 915, 362 S.W.2d 704 (1962); *State ex rel. Wm. L. Moose, Attorney General* v. *Kansas City & Memphis Railway & Bridge Co.,* 117 Ark. 606, 174 S.W. 248 (1914). In *Aluminum Co. of America* v. *Neal*, 4 Ark. App. 11, 626 S.W.2d 620 (1982), the Court of Appeals was confronted with the same question. In 1979 the legislature adopted Act 215 which permitted the payment of lump sum attorney's fees in Workers Compensation cases, rather than being paid in small weekly amounts over the duration of the claim. Alcoa challenged the application of the act as it affected fees earned and awarded *prior* to the effective date of the act. The Court of Appeals rejected Alcoa's argument that statutes must be construed as having a prospective operation, unless a contrary intent is expressly declared or necessarily implied from the language used, neither of which was true of Act 215. The opinion in *Alcoa* notes that remedial legislation is not limited to prospective operation:

> In construing remedial legislation, the courts do so with appropriate regard to the spirit which prompted its enactment, the mischief sought to be abolished and the remedy proposed. *Skelton* v. *B.C. Land Company*, 260 Ark. 122, 539 S.W.2d 411 (1976). It is also an established rule that remedial legislation shall be liberally construed. *Chicago Mill & Lumber Company* v. *Smith*, 228 Ark. 876, 310 S.W.2d 803 (1958), and *Schultz* v. *Rector-Phillips-Morse, Inc.,* 261 Ark. 769, 552 S.W.2d 4 (1977).

We regard that reasoning as sound. It applied with equal force to Act 293.

Pursuant to appellee's request for a fee as provided in § 16-22-308 (1989), a fee of $750.00 is hereby ordered.

Affirmed.

TURNER, J., not participating.