CROCKETT & BROWN, P.A. *v.* Richard COURSON

92-605                                                849 S.W.2d 938

Supreme Court of Arkansas
Opinion delivered March 22, 1993
[Supplemental Opinion on Denial of Rehearing April 26, 1993.*]

*Newbern, J., not participaring.

*Crockett, Brown & Worsham, P.A.*, by: *C. Richard Crockett*, for appellant.

*John Richard Byrd*, and *Wilson, Engstrom, Corum & Dudley*, by: *William R. Wilson* and *Gary D. Còrum*, for appellee.

TOM GLAZE, Justice. This case involves a dispute over the amount of compensation, if any, the appellee, Richard Courson, owes appellant, Crockett & Brown, P.A. (C & B), for its legal services. Courson was shot with a shotgun by a Thomas Averette, and as a result, Courson was totally blind in one eye and sustained

a thirty percent loss of vision in the other. On July 5, 1989, Courson retained C & B to represent him in his claim against Averette. by signing a contract whereby (1) he agreed to pay C & B a retainer of $7,500, (2) he would pay an hourly fee up to $15,000 (including the $7,500 retainer), plus out-of-pocket expenses and, in addition, (3) C & B would receive ten percent of any recovery which exceeded $30,000. Courson paid the retainer fee amount to C & B, and five months later, C & B filed a negligence suit against Averette.

The events that led to this acrimonious litigation between C & B and Courson began after C & B demanded policy limits, $300,000, from Averette's insurance carrier and when the carrier eventually responded a year later, January 17, 1991, with a counter-settlement offer in the sum of $100,000. Courson immediately rejected the offer, but C & B suggested to Courson that the offer was reasonable. Afterwards, Courson's relationship with C & B nose-dived. In fact, C & B then asked Courson to remit the balance of the fees and costs ($9,889.19) due under their July 5 agreement to which Courson responded that he was unable to pay. C & B informed Courson that, if he did not comply with their July 5 contract, he would have to enter a new agreement whereby C & B would receive one-third of any settlement reached at least sixty days before trial or forty percent if settled within sixty days of trial. Courson apparently indicated to C & B that he had signed and returned the agreement to C & B when, in fact, he had not done so. Instead, Courson hired other attorneys, William R. Wilson, Jr., Gary Corum and John Richard Byrd (W C & B), and notified C & B of its termination on March 11, 1991.

W C & B requested C & B to turn over Courson's file, but C & B refused, stating Courson by this time owed it more than $21,000 in fees and expenses. C & B related it would release its file only when Courson performed his part of the contract. W C & B proceeded with their representation of Courson, which resulted in a $300,000 settlement with Averette's insurance company. This settlement amount was placed into the court's registry, and C & B brought its claim for recovery under its July 5 contract and further asked that a lien be placed on Courson's cause of action. Courson responded, arguing C & B was not entitled to anything, including the $7,500 retainer paid it,

because none of the work C & B performed inured to Courson's benefit.

After conducting an extensive hearing bearing on the parties' respective claims, the trial court held that Courson had discharged C & B for cause since (1) C & B failed to require Averette to disclose his insurance coverage or to determine whether or not punitive damages were covered, (2) members of C & B expressed displeasure with Courson when Courson refused the $100,000 offer, and (3) Courson was justified in being disturbed about the way in which his case was proceeding. The trial court further found that, under Ark. Code Ann. § 16-22-303 (1987), C & B·was entitled to a reasonable attorney's fee in the amount of $15,000 and costs incurred, $2,541.27, which should be credited with the $7,500 amount Courson already had paid. The court awarded C & B a lien upon Courson's settlement proceeds and further ordered C & B to deliver Courson's file to W C & B within ten days.

C & B brings this appeal, arguing three points for reversal. Courson cross-appeals, urging the trial court erred in two respects. We review these respective claims as the parties raised and argued them on appeal.

In considering C & B's points, we have difficulty in reaching the merits of any of its arguments. First C & B seeks in this appeal to enforce not its July 5 agreement with Courson, but instead its purported amended and substituted agreement to which C & B claims Courson agreed, giving C & B a third of the $300,000 he eventually recovered in this cause. Among other things, C & B contends on appeal that Courson had stated that he had signed the new contract submitted to him by C & B, and he was estopped to deny it. However, in reviewing the record, we cannot find where this contention was ever presented to the trial court below. C & B conceded as much in oral argument. As we have repeatedly held before, this court will not countenance an argument raised for the first time on appeal. *Lytle* v. *Wal-Mart Stores, Inc.*, 309 Ark. 139, 827 S.W.2d 652 (1992); *Mini Creek Contractors, Inc.* v. *Grandstaff*, 300 Ark. 516, 780 S.W.2d 543 (1989).

In its second point, C & B submits that the trial court erred in failing to enforce C & B's request for a retaining lien,

but this issue appears to be moot. As Courson submits in response, the trial court in its October 28, 1991 order directed Courson's personal effects be returned and for his files to be copied and given to W C & B. C & B acceded to these directions, thereby making moot any prior dispute on this point between the parties.

■ Concerning C & B's final point, it argues the trial court erred in failing to award it attorney's fees under Ark. Code Ann. § 16-22-308, since it prevailed in obtaining fees and costs under its July 5 contractual agreement with Courson. While C & B argues this issue on appeal, it simply failed to raise and obtain a ruling on this matter below. In a recent case where this court decided a similar request for attorney's fees on appeal, we held that the burden of obtaining a ruling from the court is on the attorney requesting such fees and the objections and matters left unresolved below are waived and may not be relied upon on appeal. *McElroy* v. *Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991). For the foregoing reasons, we affirm the trial court's rulings on direct appeal.

On cross-appeal, Courson argues that, because C & B was discharged for cause, the trial court erred in awarding any attorney's fees to C & B. The trial court ruled that Ark. Code Ann. § 16-22-303 (1987) entitled C & B to a reasonable fee for services rendered, plus costs. The trial court was correct.

■ In *Henry, Walden & Davis* v. *Goodman*, 294 Ark. 25, 741 S.W.2d 233 (1987), this court stated that a client's exercise of the right to discharge an attorney *with or without cause* does not constitute a breach of contract because it is a basic term of the contract, implied by law into it by reason of the nature of the attorney-client relationship, that the client may terminate that contract at any time. Citing with approval the landmark case of *Fracasse* v. *Brent*, 494 P.2d 9 (Calif. 1972), this court further related the California rule that there is no injustice in awarding a discharged attorney the reasonable value of the services he or she rendered up to the time of discharge. The *Fracasse* court noted that this rule preserves the client's right to discharge his attorney, and yet acknowledges the attorney's right to fair compensation for work performed.

Although Courson argues that attorney's fees should only be awarded an attorney who is discharged without cause, the better

rule follows that related in *Fracasse* above, namely, an attorney discharged with or without cause can recover the reasonable value of his or her services to the date of discharge. The North Carolina Court of Appeals sets out a number of opinions taking this view. *See Covington* v. *Rhodes*, 38 N.C. App. 68, 247 S.E.2d 305 (1978); *see also Sohn* v. *Brockington*, Fla. App., 371 So.2d 1089 (1979); *Tobias* v. *King*, Ill. App., 406 N.E.2d 101 (1980); *Phelps* v. *Elgin, Joliet and Eastern Railway Co.*, 70 Ill. App.2d 89, 217 N.E.2d 519 (1966); *Trenti, Saxhaug* v. *Nartnik*, 439 N.W.2d 418 (Minn. App. 1989); *In Re Estate of Poli*, 134 N.J. 222, 338 A.2d 888 (1975).

Courson next contends that the amount of attorney's fees awarded C & B is excessive and not reasonable. Courson argues that, if C & B is found entitled to an attorney's fee award, the court should hold the amount could never exceed the $7,500 Courson initially paid. As mentioned earlier, the court awarded that amount and another $7,500, plus $2,541.29 costs — a total of $17,541.29.

█ This court has held that, among the pertinent considerations in determining the reasonableness of an attorney's fee, not specifically fixed by contract, are: (1) the attorney's judgment, learning, ability, skill, experience, professional standing and advice; (2) the relationship between the parties; (3) the amount or importance of the subject matter of the case; (4) the nature, extent and difficulty of services in research; (5) the preparation of pleadings; (6) the proceedings actually taken and the nature and extent of the litigation; (7) the time and labor devoted to the client's cause, the difficulties presented in the course of the litigation and the results obtained. *Robinson* v. *Champion*, 251 Ark. 817, 475 S.W.2d 677 (1972). In making these determinations, both the trial court's and this court's experience and knowledge of the character of such services may be used as a guide. *Id*. Considerable weight is to be given the opinion of the judge before whom the proceedings are conducted. *Id*.

Courson argues that C & B misunderstood the law relevant to his case and neglected to develop the case so that it would be ripe for settlement. He asserts the evidence reflects C & B browbeat and coerced him to accept an inadequate settlement offer. After Courson refused the offer, he experienced strained

relations with C & B, causing him to hire new counsel. Courson said that C & B then refused to provide file information to Courson's new counsel.

C & B presented the trial judge with considerable evidence and exhibits reflecting the legal services it rendered Courson. C & B's documents showed its hourly fee to the time of discharge totaled $22,300. C & B showed it researched Courson's case, drafted complaints and various other routine pleadings, motions and briefs. C & B made a demand for $300,000 — the limits of Averette's homeowner's liability policy. It received in return , an offer to settle for $100,000, which was refused by the client. Then, C & B began to research a structured settlement and that research is amply supported in the record. C & B argues that the arrived at structured settlement would have been worth approximately $343,000 over the long term, and was valued as worth $142,000 in present value. In fact, C & B asserts that, at the time of discharge, it had just informed Courson that C & B had begun work on attempting to bargain for an "annuity for life with cost of living escalators."

C & B showed that it had arranged and taken the depositions of Courson; Averette; Sam Smith, Sheriff of Chicot County; Donnie Dotson, the Game & Fish officer who arrested Averette; and Dr. Chen, the admitting physician who did surgery on Courson. C & B argues that its efforts educated Averette's counsel and that the settlement offers made were not mere nuisance offers. Also, C & B asserted that it was in continuous contact with the numerous hospitals and doctors who had treated Courson. The billable hours records also reflect that C & B spent a considerable amount of time talking to and writing Courson's many creditors.

From the foregoing, we cannot say the attorney's fees awarded by the trial court were excessive or unreasonable for the services C & B rendered in this matter. Accordingly, we affirm the trial court's award of attorney's fees and costs.

DUDLEY and NEWBERN, JJ., dissent.

ROBERT H. DUDLEY, Justice, concurring on direct appeal; dissenting on cross-appeal. The limited facts stated in the majority opinion, while correct, do not give a reader a complete

understanding of the essential factual underpinning of this case—that the attorneys were discharged with just cause and that their services were of little value to the client. The complete facts are as follows. Richard Courson had been turkey hunting at a private hunting club on Tom Steele Island on the Mississippi River. He was walking back to the clubhouse when a poacher, Thomas Averett, apparently mistook him for a turkey and shot him in the face with a load of number six steel shot from thirty-two steps away. Ninety-seven of the shot went into Courson's upper torso, face, and brain. As a result, even after four surgical procedures on his left eye and two procedures on his right eye costing over $30,000, he lost the sight in the left eye, incurred a thirty percent loss of vision in the right, and suffers from other less severe injuries. After Averett shot Courson, he saw that Courson was severely wounded, and fled the scene. Six or seven hours later, a game warden caught Averett and Averett confessed to what he had done.

Later, Courson hired Sam Pope of Crossett as his attorney to file a civil suit against Averett. Courson was subsequently referred to Robert J. Brown of the law firm of Crockett and Brown in Little Rock. Courson talked to Brown, decided to hire him, and amicably discharged Pope. Pope's employment has no further materiality. Courson entered into a written contract with Brown's firm, Crockett and Brown, by which the firm was to represent him in his civil suit. In the contract, Crockett and Brown agreed to be paid an hourly rate that would amount to a maximum of $15,000, plus 10 percent of any recovery in excess of $30,000. Courson paid a $7,500 retaining fee.

Crockett and Brown filed suit for Courson against Averett on November 13, 1989, a little over seven months after being employed. Even though Averett shot Courson, ran away, and left Courson to die, Crockett and Brown failed to pray for punitive damages. The law firm did not inspect Averett's insurance policy to see if it covered punitive damages and did not investigate Averett's personal net worth. The law firm failed to conduct any research on the question of exclusion of punitive damages in insurance policies. The law firm did take depositions and, on February 27, 1990, eleven months after being employed, made demand on Averett's insurance company for the $300,000 limit of his policy.

On January 17, 1991, the insurance company made an offer of $100,000. Robert J. Brown attempted to pressure Courson into accepting the offer even though the law firm had no economic analysis of Courson's loss of future earnings and did not know the amount of future medical expenses. Courson testified that he knew that he faced as much as another $20,000 in medical bills just to remove the shot still in him, and, in addition, he knew that additional eye surgery was necessary. Courson testified that Brown told him: "Goddamn it, you're not gambling with your money anymore, you're gambling with my money."

Courson knew another attorney who had retired after twenty-one years with a different insurance company and asked that attorney to evaluate his case. After conferring with this retired attorney, Courson told Brown that he would not settle his case of clear liability for less than $300,000.

Crockett and Brown never attempted to help Courson obtain social security benefits. Instead, Brown advised Courson to get into rehabilitative counseling, get a job, and try to find an oral surgeon and a neurologist in the Little Rock area.

Courson failed to pay the hourly charges and costs that he had agreed to pay to the law firm. They amounted to almost $10,000 over and above the amount paid as a retainer. Brown and an associate talked to Courson about his failure to pay the amount that he owed, and they also discussed entering into a new agreement. The law firm wanted to change the hourly contract to a one-third contingent fee agreement. Courson testified that he was without funds and felt the law firm was trying to coerce him into a contract that was more advantageous to the firm. Two weeks later Courson told the associate: "I think you're screwing me."

The insurance company offered the law firm a structured settlement totaling $150,000. Courson testified that the settlement offer had not been disclosed to him when the associate called and asked if he had signed the new contingent fee agreement. Courson testified that he told the associate that he had signed the new agreement and put it in the mail. In fact, he had not done so, and never did. According to Courson, it was only after he said that he had signed the new agreement that Brown advised him of the new structured settlement offer. Courson refused the offer and

fired Crockett and Brown.

Courson then hired the law firm of Wilson, Engstrom, Corum and Dudley, in Little Rock, and John Richard Byrd, in Hamburg. The Wilson firm and Byrd commenced representation of Courson and asked the Crockett and Brown firm for Courson's file. Crockett and Brown refused to give the file to the Wilson firm. After various motions were filed in the trial court, the Crockett and Brown firm was removed as counsel of record, and the Wilson firm and Byrd were substituted. The trial court ordered Crockett and Brown to give the Courson file to the Wilson firm, but Crockett and Brown did not do so. The Wilson firm arranged for examinations of Courson and obtained medical evaluations. The Wilson firm obtained the insurance policy and determined that punitive damages were covered. The complaint was amended to ask for punitive damages. After the Wilson firm obtained all of the necessary medical documentation and developed the appropriate economic data, a demand was made for the policy limits. The case was settled for $300,000. The settlement proceeds were placed in the registry of the court because Crockett and Brown claimed a lien on the proceeds.

This appeal involves the amount of Crockett and Brown's fee. The foregoing facts are set out in such detail to show the two critical factors: that Courson discharged Crockett and Brown "with cause," and that while Crockett and Brown may have devoted many hours to this case, Courson received little, if any, benefit from those hours of work. Thus, we have the real issue of when an attorney is discharged with cause should his fee be based primarily on the hours worked and costs expended by the attorney, or should it be based on the amount of benefit to the client?

In the trial court Crockett and Brown argued that they were entitled to the specified hourly rate plus the contingent fee of ten percent as set out in their contract of employment. Courson contended he owed Crockett and Brown nothing because he discharged them with just cause.

The trial court ruled that Courson discharged Crockett and Brown with "just cause" and that, pursuant to Ark. Code Ann. § 16-22-303 (Supp. 1991), Crockett and Brown was entitled to a "reasonable" attorney's fee in the amount of $15,000 and costs

incurred of $2,541.27, and Courson was entitled to a set-off for the $7,500 already paid.

On direct appeal, the Crockett and Brown firm makes three assignments of error. I agree with the majority opinion that we cannot reach any of their arguments because of procedural errors and, accordingly, concur with the majority opinion in affirming the trial court on the direct appeal.

On cross-appeal, Courson contends that the trial court erred in awarding to Crockett and Brown a reasonable fee based upon the amount of work done by the law firm, plus costs. This is the real issue in this case. The trial court ruled that Crockett and Brown was entitled to such a fee pursuant to Ark. Code Ann. § 16-22-303 (Supp. 1991). The majority opinion affirms that ruling. I dissent.

## Discharge of Attorney

Attorney-client contracts contain an implied provision that the client may discharge the attorney at any time, either with or without cause. *Sikes* v. *Segars*, 266 Ark. 654, 587 S.W.2d 554 (1979).

> [T]here can be no doubt of the right of a client to discharge an attorney who fails to prosecute the cause with reasonable diligence, for that is clearly the measure of an attorney's duty to his client. Any other rule would require a client to retain an attorney who was neglecting the cause and failing to proceed with proper diligence.

*Johnson* v. *Missouri Pac. R.R. Co.*, 149 Ark. 418, 427, 233 S.W. 699, 702 (1921). Because a client may always terminate the contract, a breach of contract action by an attorney for wrongful discharge does not really exist. *See Henry, Walden & Davis* v. *Goodman*, 294 Ark. 25, 741 S.W.2d 233 (1987).

## Discharge Without Just Cause

In *Henry, Walden & Davis* v. *Goodman*, a law firm was hired by the client for a contingent consideration of one-third of any recovery. That law firm was discharged without just cause. A second law firm was employed, also for a contingent consideration of one-third of any recovery. The second firm obtained a judg-

ment for $100,000, and it was paid a fee of $33,333. The first firm filed suit to collect another one-third from the proceeds of the judgment. The trial court refused to award the first firm one-third, but did award a reasonable fee to it based upon the amount of work done by that firm. We affirmed and stated that it would "be an injustice to the client to hold him liable for both contingency fees for exercising that fundamental right [to terminate the contract at any time]." We said, "an underlying assumption of this proposition is that the contingency has not been effected prior to discharge." *Id.* at 31, 741 S.W.2d at 236. That reasoning is in accord with the majority of jurisdictions. *See* Annotation, *Limitation to Quantum Meruit Recovery, Where Attorney Employed Under Contingent Fee Contract Is Discharged Without Cause*, 92 A.L.R. 3d 690 (1979).

The General Assembly enacted an attorney's compensation law in 1989 and expressly stated that the purpose of the act was to modify the effect of *Henry, Walden & Davis* v. *Goodman*, and to entitle attorneys to collect the full amount provided in the contract. Act 293 of 1989, codified as Ark. Code Ann. §§ 16-22-301 to -304 (Supp. 1991).

The material part of the 1989 act, Ark. Code Ann. § 16-22-302, provides: "The compensation of an attorney at law, solicitor, or counselor for his services is governed by the agreement, expressed or implied, *which is not restrained by law*." (Emphasis added.)

We need not resolve the question of whether the legislative branch can regulate compensation of attorneys because the statute was obviously intended to apply to situations in which the client discharged the attorney without just cause. Such is not the case now before us; this case involves discharge with just cause. Even the majority opinion tacitly agrees that the statute does not govern, for it holds that when an attorney is discharged for just cause the amount of compensation is not governed by the agreement, as set out in the statute, but rather is to be based upon the theory of quantum meruit.

## Dismissal With Just Cause

The case before us involves dismissal with just cause. In *Beaumont* v. *J.H. Hamlen & Sons*, 190 Ark. 630, 632, 81 S.W.2d

24, 25 (1935), we wrote: "The law is well settled in this and most other jurisdictions that, if an attorney . . . commits a material breach of his contract of employment, he thereby forfeits all right to compensation." The reasoning of the opinion was that a client employs the attorney to perform the entire contract, and when the entire contract is not performed, the attorney forfeits the stipulated compensation. *Id.* at 632, 81 S.W.2d at 25. As a result of the above language, cross-appellant Courson argues that the Crockett and Brown firm is not entitled to any fee whatsoever. At first blush, the argument seems to have merit. However, the case was written before our cases held that a client his an implied right to terminate a contract at any time, and that does not amount to a breach of contract. Thus, the case at bar is essentially a matter of first impression for this court.

The majority opinion holds that Crockett and Brown is entitled to compensation based upon quantum meruit, and the standard for that award is based on the amount of time and expense devoted to the case by the attorney. That is not the correct standard for this type of case. As set out in *Johns* v. *Klecan*, 556 N.E.2d 689 (Ill. App. 1990), *the rationale underlying the doctrine of quantum meruit in this type of case is that the client who benefits from the attorney's services should be required to pay the reasonable value of those services to the attorney. It is a doctrine designed to prevent the unjust enrichment of the client.* An example of this is found in *Phelps* v. *Elgin, Joliet & Eastern Ry.*, 217 N.E.2d 519 (Ill. App. 1966), where the attorney was discharged for cause and under the established law was entitled to recover under the doctrine of *quantum meruit.* The trial court ruled that under the theory of *quantum meruit* the attorney was not entitled to a fee, and the appellate court affirmed stating: "Nothing of value has been recovered by reason of any act done or suit brought by the respondents. On the basis of this record, we must conclude, as did the trial judge, that the respondents are not entitled to recover any fees." *Id.* at 523. It did not matter how much time the attorney devoted to the case because the client did not unjustly benefit. The same reasoning should be applied to this case. Crockett and Brown may have devoted many hours to building the file, but they refused to turn that file over to the Wilson firm, and the work product in that file was of no value to the client in the settlement of his case. Crockett

and Brown was discharged with just cause, and is entitled to a fee only for those services that were of benefit to the client, and, on cross-appeal, this case should be reversed for a determination of that amount, if any.

The rule has been stated as follows:

> It has been held that a lawyer who unjustifiably terminates his employment, or gives the client cause to discharge him prior to completion of the services for which he was engaged, can recover against the client only the amount by which his services have benefited the client, who, in the absence of recovery by the attorney, would be unjustly enriched by such services.

7 Am. Jur. 2d *Attorneys at Law* § 299 (1980).

Under the majority opinion a lawyer might commit some act that is inimical to the best interest of his client, but he would still be paid a windfall as compensation for his time expended in committing that act. Suppose that an attorney was representing a plaintiff against an insurance company, but failed to disclose to the client that also he was representing the insurance company in the same case, and the client eventually found out about the conflict of interest and discharged the attorney "with just cause." *See Miller* v. *Solomon*, 199 N.E.2d 660 (Ill. App. 1964). Under the rationale of majority opinion the attorney could collect for all the work he had done in the client's name, regardless of whether it was of benefit to the client. The majority opinion will lead to windfalls for attorneys who are discharged with just cause because it fails to recognize that the basis for quantum meruit in this type of case is to prevent the unjust enrichment of the client.

Many of the cases cited in the majority opinion offer no support for the opinion. The majority opinion cites the case of *Covington* v. *Rhodes*, 247 S.E.2d 305 (N.C. 1978), as supporting its position. However, that case involved an attorney who had "performed in a reasonably professional manner," and the court discussed discharge in terms of being "without cause." The majority opinion cites *Sohn* v. *Brockington*, 371 So.2d 1089 (Fla. Dist. Ct. App. 1979), but, again, that case was one in which the attorney was discharged "without cause." The majority opinion also cites *In Re Estate of Poli*, 338 A.2d 888 (N.J. Co. Ct. 1975),

but, in that case, even though the client contended that the attorney was discharged with cause, the court discussed the case in terms of discharge "without cause." The case of *Fracasse* v. *Brent*, 494 P.2d 9 (Cal. 1972), also involved discharge of the attorney "without cause." In that case, the Supreme Court of California said that the attorney had been discharged "without cause" and was entitled to receive the value of his services up to the time he was discharged. While the discussion about cases involving discharge "with cause" is dicta, the opinion does allude to a different standard for the fee when an attorney is discharged "with cause," as follows:

> Amicus contends that there will be substantial difficulty in ascertaining the amount of recovery under a *quantum meruit* theory. The same difficulty—if such it be—is also present, however, in cases in which an attorney has been discharged with "cause" and yet such difficulty does not appear to have been insurmountable.

*Id.* at 13.

In summary, the majority opinion provides a windfall to attorneys who are discharged with just cause. It allows them to recover "reasonable fees" based primarily on the amount of time expended by the attorney, regardless of whether the work benefitted the client. Such a standard is not in comport with the rationale for *quantum meruit* in this type case. The holding should be that when an attorney is discharged with just cause, he might recover on the basis of *quantum meruit* for the amount that his services has enriched the client. Accordingly, I dissent on cross-appeal.

NEWBERN, J., joins in this concurrence and dissent.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
APRIL 26, 1993

*C. Richard Crockett*, for appellant.

*Wilson, Engstrom, Corum & Dudley*, by: *William R. Wilson, Jr.* and *John R. Byrd*, and *Gary D. Corum* for appellee.

TOM GLAZE, Justice. Appellee Courson petitions for rehearing and clarification of the court's opinion in this cause and particularly asks whether by this court's reference to *Henry, Walden & Davis* v. *Goodman*, 294 Ark. 25, 741 S.W.2d 233 (1987), we intended to hold the General Assembly's enactment of Ark. Code Ann. §§ 16-22-301 to -304 (Supp. 1991) is a nullity. He points out that the General Assembly enacted §§ 16-22-301 to -304 with the intent to supersede the holding in *Goodman* and to allow an attorney a lien for services based on the attorney's agreement with his or her client.

In reading § 16-22-301, the court concluded the General Assembly's new enactments applied to situations where the client discharged an attorney without cause. The *Goodman* case was a without-cause situation — the cause here is one involving a with-cause discharge. In short, our holding in this case should not be read to invalidate §§ 16-22-301 to -304 since those provisions were not applicable nor in issue. Our earlier reference to *Good-*

*man* was intended to underscore the *Fracasse* rule to the extent that rule allowed an attorney discharged with cause to recover the reasonable value of his or her services to the date of discharge.[1]

　　■　In addition to requesting a clarification, Courson reasserts his position adopted by the dissenting opinion, that the standard of recovery of attorneys in with-cause discharges should be limited to the amount the attorney's services enriched his or her client. He claims the "reasonable value" rule the court adopted permits an attorney discharged for cause to recover based merely on his or her time cards. We disagree. The various factors set forth in our earlier opinion have been applied for decades by this state's courts. Such awards are determined on a case-by-case basis, and depending upon the circumstances, the trial court in its discretion may not award any fee. Courson's argument in this respect is without merit.

---

[1] The court's adoption of this rule was opposed by dissenting Justices Dudley and Newbern who opted for a rule requiring that an attorney discharged with cause was limited to a fee for the amount his or her services had enriched the client. Both the majority and dissenting justices agreed §§ 16-22-301—304 were not applicable in this case since those provisions applied in without cause discharge.