MOBLEY LAW FIRM, P.A. *v.* LISLE LAW FIRM, P.A.

03-159                                                                 120 S.W.3d 537

Supreme Court of Arkansas
Opinion delivered June 26, 2003

*Mobley Law Firm, P.A.*, by: *Jeff Mobley*, for appellant.

*Lisle Law Firm, P.A.*, by: *Chris Lisle*, for appellee.

RAY THORNTON, Justice. Attorney Jeff Mobley of Mobley Law Firm, P.A., appeals a trial court's order finding that Mr. Mobley was fired for cause by his client, Chris Barnett, and that he should be awarded $4,166.67, one-fourth of the attorney's fees received out of the settlement, for the work he performed as Mr. Barnett's attorney. Mr. Mobley argues that the attorney's lien statute should control and that his award of fees should be increased to one-third of the settlement, an amount equal to 100 percent of all attorney's fees collected out of the settlement proceeds. In the alternative, he argues that according to the principle of *quantum meruit*, he is entitled to a larger share of the attorney's fees than the trial court awarded. Appellee, Lisle

Law Firm, the firm hired by Mr. Barnett to replace Mr. Mobley, responds that the trial court's order should stand. We agree with appellee, and we affirm.

On May 19, 2000, Mr. Barnett contacted Mr. Mobley concerning his injuries and medical bills resulting from an automobile accident that occurred on January 11, 2000. Mr. Barnett signed a contract with Mr. Mobley that declared Mr. Mobley his attorney in this matter and that entitled Mr. Mobley to thirty-three and one-third percent of any settlement prior to litigation. In the event litigation occurred, Mr. Mobley would then be entitled to forty percent of any settlement, and in the event of an appeal to this court, Mr. Mobley would be entitled to receive fifty percent of whatever recovery resulted. The contract further stipulated that Mr. Mobley would be entitled to reimbursement of any out-of-pocket expenses incurred during the suit.

On May 25, 2000, Mr. Mobley sent representation letters to the various hospitals involved in Mr. Barnett's care informing them that he was Mr. Barnett's attorney. Mr. Mobley also sent lien letters to the insurance companies and the driver of the other automobile. Mr. Mobley also sent Mr. Barnett's medical bills requested by the third-party insurance carrier.

Mr. Mobley and Mr. Barnett began to have personal conflicts during this time. After several instances of disagreement between the two, particularly concerning the rate at which the case was progressing, Mr. Mobley told Mr. Barnett that he did not "have a speedometer up his ass."

On September 7, 2000, Mr. Mobley received a letter from Mr. Barnett terminating his services. On that same date, Mr. Mobley received a letter from Lisle Law Firm informing Mr. Mobley of Deric Yoakley's handling of Mr. Barnett's case. Mr. Barnett's letter cited Mr. Mobley's failure to send letters to healthcare providers explaining his inability to pay his bill, and failure to discuss the case with him as his reasons for terminating Mr. Mobley's services.

Roughly fourteen months later, the case was settled for $50,000.00 with $25,000.00 from the tortfeasor's insurance carrier

and $25,000.00 from the underinsured carrier. On November 13, 2001, the Lisle Law Firm filed a motion for declaratory judgment in the Pope County Circuit Court tendering the entire amount of the attorney's fees and requesting that the court determine the rights and status of Mr. Mobley and Mr. Yoakley.[1] Mr. Mobley filed a response and counterclaim denying that he was fired for cause and asserting that he should recover one-third of the $50,000.00 settlement based on the attorney's lien statute and not a *quantum meruit* basis. After hearing testimony from witnesses for both appellee and appellant, the trial court found that Mr. Mobley was terminated for cause and was entitled to reasonable *quantum meruit* recovery of one-fourth of the attorney's fees, or $4,166.67. It is from this order that Mr. Mobley appeals.

■ We review chancery cases *de novo* on the record and will not disturb the findings of the chancellor unless clearly against the preponderance of the evidence. *Williams v. Ashley*, 319 Ark. 197, 890 S.W.2d 260 (1995). Because the preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the superior position of the chancellor. *Id.*

Mr. Mobley's first point on appeal is whether the trial court erred in finding he was fired for cause. On this point, we affirm.

There is no brightline rule for this court to employ when determining whether an attorney was fired for cause. However, we have reviewed the issue several times. In *Williams, supra*, we determined that an attorney was fired for cause when the attorney scheduled and attended an unnecessary hearing. *Id.* After the hearing, the client was never again able to communicate with her lawyer. *Id.* Furthermore, in the beginning of their relationship, the client was unable to speak with her attorney and was referred to the secretary with her legal questions. *Id.* We held that "it is implicit in the trial court's findings of fact that appellant was dis-charged by appellee for cause." *Id.*

In *Crockett & Brown, P.A. v. Courson*, 312 Ark. 363, 849 S.W.2d 938 (1993), we affirmed the trial court's finding that an

---

[1] The attorney's fees were one-third of $50,000.00, or $16,667.00, and tendered to the court.

attorney was fired for cause when payment of the attorneys during the litigation became an acrimonious issue. *Id.*

Here, the trial court found in its order that Mr. Mobley was fired for cause and cited the following facts:

> Mr. Barnett was anxious to learn about the progress of his case. He was receiving calls to collect on his medical bills. During the meeting with his client, Mr. Mobley candidly admits telling his client "I don't have a speedometer up my ass." The court finds this comment and admission shocking. The court finds that attorneys have a duty to treat their clients with respect. This comment does not evidence respect for the client, and was not received well by his client. This lack of respect substantially undermined the confidence of the client in the attorney's services, and was just cause for termination of the relationship.

Though the trial court specifically cited this comment in support of its finding that Mr. Mobley was fired for just cause, the trial court heard much other testimony that indicated that Mr. Barrett had cause for firing Mr. Mobley. As stated above, we review this case *de novo*. *Williams, supra.* Furthermore, we may go to the record to affirm. *Hosey v. Burgess,* 319 Ark. 183, 890 S.W.2d 262 (1995). In reviewing the other evidence presented at trial, we agree with the trial court's conclusion that Mr. Mobley was fired for cause. Mr. Barnett testified at trial that Mr. Mobley refused to return phone calls. Mr. Mobley responded that Mr. Barnett had not specifically asked him to return his calls, so he did not. Mr. Barnett also testified that Mr. Mobley offered to supply a phony photo of a wrecked car, not the one in which Mr. Barnett was a passenger, because Mr. Barnett had not taken photos of the car. Mr. Barnett testified that although he had expressed his desire for Mr. Mobley to inform his creditors about the pending litigation, Mr. Mobley never contacted them to explain Mr. Barnett's situation. There was also testimony at trial that Mr. Mobley did not recognize Mr. Barnett or remember the facts of his case when Mr. Barnett finally did get to meet with Mr. Mobley.

Mr. Mobley's failure to communicate with his client, the disputed offer to supply a phony photo of the car, and Mr. Mobley's failure to write letters to creditors as his client requested, exacerbated the disrespectful nature of his "speedometer" com-

ment, and amounts to cause for firing Mr. Mobley. We hold that the trial court did not commit reversible error in finding that he was fired for cause. Accordingly, we affirm on this point.

Mr. Mobley asserts for his second point on appeal that the trial court should have applied the attorney's lien statute because he was not fired for cause or, in the alternative, that the trial court's *quantum meruit* fee award was less than he had earned. Because we have determined that Mr. Mobley was fired for cause, we need not reach the issue of whether the attorney's lien statute should apply.[2]

Mr. Mobley's alternative argument that he was not allotted an appropriate share of the settlement fails. On this point, we affirm the trial court.

In *Crocket & Brown, P.A., supra,* we held that even if an attorney is fired for cause, he is entitled to the reasonable value of his services to the date of discharge. The reasonable value of an attorney's services is measured by an attorney's skill and experience, relationship between the parties, the difficulty of the services, the extent of the litigation, and the time and labor devoted to the cause and the results obtained. *Robinson v. Champion,* 251 Ark. 817, 475 S.W. 2d 677 (1972).

Here, the trial court made its determination of the fees to be awarded to Mr. Mobley based on the time he spent on the case, the labor involved, his skill and ability, and the nature and extent of the litigation. The trial court found that one-fourth of the amount of the settlement was due to Mr. Mobley, in part, because the case took sixteen months to be resolved, and Mr. Mobley worked on the case for four months, or one-fourth the amount of time. The trial court also found that Mr. Mobley was an experienced attorney who had handled personal injury cases since 1958. The trial court determined that Mr. Mobley had performed services for four months until he was terminated and that Mr. Yoakley had also performed adequately as Mr. Barnett's attor-

---

[2] Ark. Code Ann. § 16-22-301(1987) states in the annotations: "The attorney's lien statutes, this section through § 16-22-303, do not apply to cases in which an attorney is terminated for cause."

ney for twelve months, and that each should be compensated accordingly. From the bench, the trial court stated: "The only fair way I can see to come up with a reasonable fee is to divide the time that Mr. Mobley spent on the case. He spent one-fourth of the time and Mr. Yoakley had it three-fourths of the time that it took to conclude." Because the trial court considered Mr. Mobley's effort, experience, skill, and time spent, he sufficiently considered the factors in *Crockett & Brown, P.A.*, *supra*, that led to a reasonable distribution of fees to Mr. Mobley and Mr. Yoakley.

Accordingly, we affirm.

CORBIN, J., not participating.