Joy SALMON *v.* Virginia ATKINSON and James Howell

03-535                                    137 S.W.3d 383

Supreme Court of Arkansas

Opinion delivered December 11, 2003

[Petition for rehearing denied January 15, 2004.*]

---

* DICKEY, C.J., not participating.

*Wright, Lindsey & Jennings LLP*, by: *Alston Jennings*, for appellant.

*James R. Howell, pro se.*

DONALD L. CORBIN, Justice. This case involves an issue of first impression: Whether an attorney who enters into a contingent-fee contract with a client and is later discharged by the client may bring an action for a *quantum-meruit* fee prior to the resolution of the former client's lawsuit. Appellant Joy Salmon contends that the discharged attorney's cause of action does not accrue unless and until the client is successful in recovering an award. She thus contends that the Pulaski County Circuit Court erred in awarding Appellees Virginia Atkinson and James Howell legal fees in the amount of $7,200, for work they performed in representing Appellant prior to date that she discharged them. Because this appeal raises an issue of first impression, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We affirm.

The essential facts are not disputed. In June 2000, Appellant hired Appellees to pursue a claim for damages against the estate of George Brown. Appellant had lived with Brown for some time prior to his death and had cared for him as his nurse. Additionally, Appellant believed that she was married to Brown and, as his widow, she wanted to pursue a claim against Brown's estate. Appellees agreed to take Appellant's case on a contingency basis, in which Appellees would receive fifty percent of any recovery awarded to Appellant, plus costs and expenses. The contingent-fee contract was entered into on June 19, 2000, and it provided in pertinent part: "It is understood that in the event of no recovery, no fee shall be charged by Atkinson Law Offices."

Appellees then began to work on Appellant's case. They interviewed multiple witnesses, researched Appellant's claim of marriage to Brown, researched the general law, and negotiated with the estate's attorneys. Through their research, Appellees discovered that Appellant was never married to Brown. However, they believed that Appellant had a valid claim against the estate, which was valued at approximately $4 million, for the care that she had given to Brown prior to his death. Based on their investigation and research, Appellees drew up a petition for Appellant to file in the probate case. Sometime in late July, they presented the petition to Appellant for her signature. Appellant indicated that she wanted to think about filing the claim, and she took the petition with her. The next communication Appellees received from Appellant was a letter, dated August 1, informing them that their services were no longer required.

Thereafter, in a letter dated August 21, 2000, Appellees informed Appellant that she had abrogated the June 19 contract without justification and that, therefore, she was required to pay Appellees for their services from June 19 to July 31. The letter reflects in part: "In investigation of your claims, legal research, and negotiation with the estate we expended 48 hours. At our customary billing rate of $150 per hour, the total fee payable at this time is $7200." The letter also informed Appellant that the last date for which she could file her claim against Brown's estate was September 1, 2000. The record reflects that on September 1, 2000, Appellant filed a petition against the estate, *pro se*.

On May 10, 2001, Appellees filed suit against Appellant in circuit court, seeking recovery in *quantum meruit* for work they had performed on Appellant's case prior to the date that she discharged them. Following a trial on December 3, 2002, the jury returned a verdict in favor of Appellees. Thereafter, Appellant filed a motion for judgment notwithstanding the verdict (JNOV), arguing that because the contingent-fee contract specifically provided that no fee would be charged unless there was a recovery, and because there had not yet been any recovery, the jury verdict was not supported by substantial evidence. The trial court denied that motion on December 17, 2002. The judgment was also entered of record on that date. On January 2, 2003, Appellant filed a motion for new trial and a renewed motion for JNOV. The trial court denied those motions on February 4, 2003. Appellant then filed a notice of appeal on February 28, 2003.

On appeal, Appellant argues that allowing Appellees to collect a *quantum meruit* fee directly conflicts with the language of the contract providing that no fee would be charged in the event that Appellant did not recover on her probate claim. Thus, she asserts that because she has not yet recovered on her claim, it was error to award a fee to Appellees. She contends further that the award of fees to Appellees under the circumstances impaired her absolute right, as the client, to discharge Appellees and terminate their services.

As stated above, the issue of when a discharged attorney's cause of action for a *quantum meruit* fee accrues is one of first impression in this court. However, this court has consistently held that a discharged attorney may be paid for the reasonable value of his or her services notwithstanding that the parties originally entered into a contingent-fee contract. *See, e.g., Crockett & Brown, P.A. v. Courson*, 312 Ark. 363, 849 S.W.2d 938 (1993); *Lancaster v. Fitzhugh*, 310 Ark. 590, 839 S.W.2d 192 (1992); *Lockley v. Easley*, 302 Ark. 13, 786 S.W.2d 573 (1990); *Henry, Walden, & Davis v. Goodman*, 294 Ark. 25, 741 S.W.2d 233 (1987) (*superseded in part by statute*). The plain rationale behind this rule is that where the attorney has conferred a benefit upon the client, *i.e.*, legal services and advice, the client is responsible to pay such reasonable fees.

The question in this case is not whether the discharged attorney may recover a *quantum meruit* fee, but whether recovery of such a fee is dependent upon the contingency originally agreed to in the contract, *i.e.*, the successful prosecution of the client's case. There is a split amongst the states on this issue. Some states adhere to the "California rule," which provides that the discharged attorney's cause of action does not accrue unless and until the occurrence of the stated contingency. *See Clerk of Superior Court of Guilford County v. Guilford Builders Supply Co., Inc.*, 87 N.C. App. 386, 361 S.E.2d 115 (1987); *Plaza Shoe Store, Inc. v. Hermel, Inc.*, 636 S.W.2d 53 (Mo. 1982); *Rosenberg v. Levin*, 409 So.2d 1016 (Fla. 1982); *Fracasse v. Brent*, 6 Cal. 3d 784, 494 P.2d 9 (1972); *First Nat'l Bank & Trust Co. of Tulsa v. Bassett*, 83 P.2d 837 (Okla. 1938). Under this rule, a discharged attorney is barred from receiving any fee if the client does not recover on the underlying matter. This is true even if the attorney was discharged without cause.

■ Other states subscribe to the "New York rule," which provides that the discharged attorney's cause of action accrues immediately upon discharge and is not dependent upon the former client's recovery. *See Skeens v. Miller*, 331 Md. 331, 628 A.2d 185 (1993); *Adkin Plumbing & Heating Supply Co., Inc. v. Harwell*, 135 N.H. 465, 606 A.2d 802 (1992); *In Re: Estate of Callahan*, 144 Ill.2d 32, 578 N.E.2d 985 (1991); *Trenti, Saxhaug, Berger, Roche, Stephenson, Richards & Aluni, Ltd. v. Nartnik*, 439 N.W.2d 418 (Minn. Ct. App. 1989); *Tillman v. Komar*, 259 N.Y. 133, 181 N.E. 75 (1932). The courts that subscribe to this rule do so primarily for two reasons. First, they reason that when the client terminates the contingent-fee contract by discharging the attorney, the contract ceases to exist and the contingency term, *i.e.*, whether the attorney wins the client's case, is no longer operative. As the New York Court of Appeals explained: "Either [the contract] wholly stands or totally falls." *Tillman*, 259 N.Y. at 135, 181 N.E. at 75. Because the contract is terminated, the client can no longer use the contract's term to prevent the discharged attorney from recovering a fee in *quantum meruit.* "A client cannot terminate the agreement and then resurrect the contingency term when the discharged attorney files a fee claim." *Estate of Callahan*, 144 Ill.2d at 40, 578 N.E.2d at 988.

The second primary reason that courts subscribe to the "New York rule" is that they believe that forcing the discharged attorney to wait on the occurrence of the contingency is unfair in that it goes beyond what the parties contemplated in the contract. The New York Court of Appeals said it best:

> *The value of one attorney's services is not measured by the result attained by another. This one did not contract for his contingent compensation on the hypothesis of success or failure by some other member of the bar. . . .* In making their agreement, the parties may be deemed to have estimated this lawyer's pecuniary merit according to his own character, temperament, energy, zeal, education, knowledge and experience which are the important factors contributing to his professional status and constituting in a large degree, when viewed in relation to the volume of work performed and the result accomplished, a fair standard for gauging the value of services as prudent counsel and skillful advocate.

*Tillman*, 259 N.Y. at 135-36, 181 N.E. at 76 (emphasis added).

An additional reason for holding that a discharged attorney does not have to wait on the occurrence of the contingency is that the attorney is not claiming under the contingent-fee contract. The Illinois Supreme Court explained:

> [Q]uantum meruit is based on the implied promise of a recipient of services to pay for those services which are of value to him. The recipient would be unjustly enriched if he were able to retain the services without paying for them. The claimants's recovery here should not be linked to a contract contingency when his recovery is not based upon the contract, but upon quantum meruit.

Estate of Callahan, 144 Ill.2d at 40-41, 578 N.E.2d at 988 (citations omitted).

We believe that the "New York rule" is the better rule. Applying that rule to the facts of this case, we hold that the trial court did not err in awarding a quantum meruit fee to Appellees. The undisputed evidence showed that Appellant hired Appellees to pursue a claim against the estate of George Brown. She entered into a contingency-fee agreement, whereby she agreed to pay Appellees fifty percent of any recovery they obtained for her, plus costs and expenses. For the next six weeks or so, Appellees performed work on Appellant's case, which involved interviewing multiple witnesses, performing document research and general legal research, negotiating with the estate's attorneys, and, finally, preparing a petition for Appellant to file in the probate matter.

Appellees reviewed the prepared petition with Appellant and presented it to her for her signature. She declined to sign the petition at that time, indicating that she wanted to think about it. She then took the petition with her. The next communication Appellees had with Appellant was a letter in which Appellant discharged them without explanation. Thereafter, Appellant filed a pro se claim against Brown's estate, raising the same issues that Appellees had attempted to pursue on her behalf. When asked about the similarity of the contents of Appellant's pro se claim, Appellee Atkinson testified that it "embodies all of the things we discussed and all of the avenues we pursued to try to recover something for her[.]"

Based on the foregoing evidence, we hold that Appellees' cause of action to recover reasonable attorney's fees, under the theory of quantum meruit, accrued immediately upon their

being discharged by Appellant. While we are mindful of the client's right to discharge his or her attorney at any time, we do not believe that our holding in this case in any way impairs that right. To the contrary, this court has previously determined that the client's right to discharge the attorney is not compromised by allowing the discharged attorney to recover in *quantum meruit*. *See Goodman*, 294 Ark. 25, 741 S.W.2d 233.[1] We thus affirm the trial court's judgment.

IMBER, J., concurs.

ANNABELLE CLINTON IMBER, Justice, concurring. The majority is correct that the trial court should be affirmed, but this is so because Ms. Salmon's appellate brief offers no citation to authority or convincing argument for reversal. Furthermore, while I agree with the majority's decision *in this case*, I write because the majority paints its holding with too broad a brush. A fair reading of the majority opinion could, in a contingency-fee case, deny a client the option of dropping a lawsuit. Such a result could tear at the foundation of the attorney-client relationship.

The majority frames the issue as follows: "Whether an attorney who enters into a contingent-fee contract with a client and is later discharged by the client may bring an action for a *quantum meruit* fee prior to the resolution of the former client's lawsuit." In this case, however, the client not only discharged the attorneys; she also moved forward with her lawsuit, utilizing her discharged attorneys' work product. The "New York rule" em-

---

[1] The holding in *Goodman* was effectively overruled by the General Assembly in Act 293 of 1989, to the extent that the case limited the attorney-lien law by allowing only a *quantum meruit* recovery in a case in which the attorney was discharged by the client. The Act reflected in part that the *Goodman* decision was contrary to the intent of the attorney-lien law, that an attorney should have the right to rely on his or her contract with the client. Thus, under the attorney-lien law, a discharged attorney may recover the full amount of the contracted fee. This court subsequently construed the attorney-lien law as providing a lien for the full contract amount *only* to those attorneys who have been discharged *without cause*; however, those attorneys discharged with cause are limited to a reasonable fee for services rendered prior to the discharge, under the theory of *quantum meruit*. *Crockett & Brown, P.A. v. Courson*, 312 Ark. 363, 377-A, 849 S.W.2d 938, 946 (1993) (*supplemental opinion denying rehearing*). *See also McDermott v. McDermott*, 336 Ark. 557, 986 S.W.2d 843 (1999); *Finnegan v. Johnson*, 326 Ark. 586, 932 S.W.2d 344 (1996); *Williams v. Ashley*, 319 Ark. 197, 890 S.W.2d 260 (1995); *Lancaster*, 310 Ark. 590, 839 S.W.2d 192.

braced by the majority has as its basis the idea that it is unfair to force a discharged attorney to wait on the occurrence of the contingency — a successful outcome in the litigation — before receiving payment for work performed. This is true because, as stated by the New York Court of Appeals,

> The value of one attorney's services is not measured by the result attained by another. This one did not contract for his contingent compensation on the hypothesis of success or failure by some other member of the bar. . . .

*Tillman v. Komar*, 259 N.Y. 133, 181 N.E. 75 (1932).

I am in complete agreement with *Tillman* and the majority on this point. However, the blanket holding by the majority that, "Appellees' cause of action to recover reasonable attorney's fees, under the theory of *quantum meruit*, accrued immediately upon their being discharged by Appellant," goes too far because it is not narrowly tailored to the facts of this case. In this case, Ms. Salmon discharged Ms. Atkinson and Mr. Howell *without cause*, and then used their research and the documents they had created to file her own *pro se* lawsuit. It would certainly be unfair to require these attorneys to base their recovery on whether or not Ms. Salmon competently represented herself in the suit and obtained a favorable outcome. After all, it was Ms. Salmon who chose to take their work and proceed forward with it.

But, what if Ms. Salmon had decided she just wanted to drop her lawsuit altogether? What of the contingency-agreement client who, due to illness or stress or a change of heart, decides she does not wish to pursue further litigation? The majority's opinion would require that client to continue to pursue a lawsuit she no longer wants to pursue, or pay *quantum meruit* fees that could quite literally amount to thousands, or even hundreds of thousands, of dollars. In effect, the lawsuit would become the *attorney's* lawsuit, because the only person benefitting from such a situation would be the attorney who is counting on the contingency fee. It seems to me that this situation would violate at least two of the Model Rules of Professional Conduct:

> *Rule 1.2. Scope of Representation.*
>
> (a) A lawyer shall abide by a client's decisions concerning the objectives of representation. . .

\* \* \* \*

*Rule 1.8. Conflict of interest: prohibited transactions.*

(j) A lawyer *shall not acquire a proprietary interest in the cause of action* or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

(1) acquire a lien granted by law to secure the lawyer's fee or expenses; and

(2) contract with a client for a reasonable contingent fee in a civil case.

Ark. Mod. R. Prof. Cond. 1.2 & 1.8 (2003) (emphasis added).

If, as the majority holds, an attorney in a contingent-fee action is always entitled to a *quantum meruit* fee upon discharge, a poor client without funds to pay such a fee may be forced by the attorney to continue with a lawsuit that the client would prefer not to pursue, thus violating Rule 1.2(a). Additionally, a lawsuit that is pursued for the sole reason of securing a contingency fee for the attorney certainly violates both the letter and the spirit of Rule 1.8(j). At that point, *only* the attorney's proprietary interest is fueling the cause of action. Certainly, Rule 1.8(j) allows an attorney to have a proprietary interest in a contingent outcome, but I do not believe that the fee should become the sole "raison d'etre" for the lawsuit.

Moreover, what about the case of a client who discharges an attorney *with* cause? The breadth of the majority's holding is such that it does not distinguish between attorneys discharged without cause from those discharged with cause. However, our precedent has never required a client in a contingency-fee case to pay a fee to an attorney discharged with cause until and unless there is a recovery, and then the fee is based on *quantum meruit. See, e.g., Mobley Law Firm P.A. v. Lisle Law Firm, P.A.,* 353 Ark. 828, 120 S.W.3d 537 (2003); *Crockett & Brown, P.A. v. Courson,* 312 Ark. 363, 849 S.W.2d 938 (1993).

In a situation like the one at bar, in which a client breaches a contingency-fee agreement by discharging the attorney without cause and then pursuing the suit *pro se,* or with the benefit of another attorney's services, I agree with the majority that the

attorney is entitled to a *quantum meruit* fee for services rendered. I also agree that the attorney who is discharged without cause should not have to wait until recovery for the fee, but the fee should be due immediately if the client proceeds forward with the suit. In my view, however, the majority's holding is so broad as to force impoverished clients, who could never have afforded hourly fees in the first place, to continue with litigation against their wishes. It is true that attorneys who contract on contingency-fee cases may sometimes be left with nothing if the client decides to drop the lawsuit, but that is a risk those attorneys take for the chance to receive a percentage of a large settlement or damages award. The people who will really suffer from this holding are low-income Arkansans who might be willing to contract on a contingency-fee basis but will decide not to pursue lawsuits at all for fear they will be forced into financial ruin if they need to drop their lawsuit for some unforeseeable reason. In sum, while I concur in the result because the appellant provided neither citation to relevant authority nor cogent argument for reversal, I must also disagree with majority's blanket holding.