Robert Clayton WYNN *v.* Robert P. REMET
and John Lewis McGehee

95-62                                             902 S.W.2d 213

Supreme Court of Arkansas
Opinion delivered July 3, 1995

*Kenneth A. Harper*, for appellant.

*Robert P. Remet* and *John Lewis McGehee*, for appellees.

DAVID NEWBERN, Justice. The issue before us is whether the Trial Court erroneously declined to award attorney's fees. Robert Clayton Wynn, the appellant, contends he was entitled to attorney's fee awards pursuant to Ark. Code Ann. § 16-22-309 (Repl.

1994) because there was a complete absence of a justiciable issue of either law or fact raised in counterclaims against him by Robert P. Remet and John Lewis McGehee, the appellees. In accordance with subsection (d) of the statute, we have reviewed the record *de novo*, and we agree with Mr. Wynn; therefore, we reverse the Trial Court's decision and remand the case.

Robert P. Remet is an attorney. He is also a tenant on land owned by John Lewis McGehee. Mr. Remet had a boundary line dispute with neighboring land owners named Brown. He called another attorney, Kenneth Harper, who represented the Browns, seeking recommendation of a surveyor. Mr. Harper recommended Mr. Wynn.

When Mr. Wynn went on Mr. McGehee's land, after agreeing with Mr. Remet to conduct the survey, Mr. McGehee challenged his presence but ultimately agreed to allow the survey after learning that Mr. Remet had hired Mr. Wynn. Mr. McGehee distrusted Mr. Harper, and there was disputed testimony over whether he asked Mr. Wynn at the outset if he was related to Mr. Harper and whether and what Mr. Wynn might have answered to that question.

Mr. Wynn prepared a plat showing the location of the disputed line and billed Mr. Remet $510. According to Mr. Remet, if Mr. Wynn had answered questions about the survey he would have paid the bill. Mr. Remet testified he thought the bill was to have been $350. Mr. Wynn testified he had told Mr. Remet $350 was the minimum and that it might be more.

Mr. Wynn filed his initial complaint in the Small Claims Division of the Star City Municipal Court on May 4, 1992, for $510. The complaint alleged that Mr. Remet, acting as attorney for Mr. McGehee, had hired him (Wynn) and that Mr. Remet and Mr. McGehee had refused to pay. In their answers, Mr. Remet and Mr. McGehee denied owing Mr. Wynn "anything." They also counterclaimed.

Mr. McGehee sought $141,575.25, as damages, costs, and attorney's fees, alleging Mr. Wynn had maliciously clouded the title to his land and was liable for deliberate infliction of mental distress, abuse of process, and trespass. Mr. Remet sought $41,500.00, alleging that Mr. Wynn had close connections with

the neighbors with whom the dispute had occurred and had created a false survey. He alleged Mr. Wynn's suit was an abuse of process filed to inflict emotional harm and "corrupt prosecution."

The case was transferred to Circuit Court, and Mr. Wynn filed an amended complaint, renewing his contract claim of $510 and alleging that the counterclaims were without justiciable issue in either law or fact and that he should be entitled to attorney's fees and costs.

Prior to trial, Messrs. Remet and McGehee offered to settle the dispute by dismissing their counterclaims and tendering $510.00 as payment for the survey. Mr. Wynn refused, the counterclaims were not dismissed, and the case was tried on the merits.

Mr. Remet testified he became suspicious of the results of the survey after he discovered that Mr. Wynn was Kenneth Harper's first cousin. He said that his suspicions deepened after Mr. Wynn refused to return his calls when he wanted an explanation of the survey. Mr. Wynn's wife testified she called Mr. Remet about the bill and he said he would pay "after court" and did not otherwise complain or question the bill.

Daniel Robison, another land surveyor, first spoke with Mr. Remet in August, 1993. Mr. Remet asked him to do a second survey of the line and not to consult Mr. Wynn. Mr. Robison testified that the plat prepared by Mr. Wynn was substandard because it showed a "calculated corner" without stating the method of calculation. He concluded it was apparent that a corner marker had been moved some 13 feet, but his ultimate calculation placed the boundary line within one foot of the place Mr. Wynn had found it to be. He said Mr. Wynn's survey was thus, according to minimum surveying standards, an accurate survey. Mr. Robison presented that result to Mr. Remet in October of 1993.

In his testimony, Mr. Remet said that after receiving Mr. Robison's survey result he had "no problem" with Mr. Wynn's survey.

■ As a general rule, attorney's fees are not allowed in Arkansas unless expressly authorized by statute. *Elliott* v. *Hurst*, 307 Ark. 134, 817 S.W.2d 877 (1991); *Damron* v. *University Estates*, Phase II, Inc., 295 Ark. 533, 750 S.W.2d 402 (1988).

However, in any civil action in which the court having jurisdiction finds there was a complete absence of a justiciable issue of either law or fact raised by the losing party or his attorney, the court may award an attorney's fee in an amount not to exceed $5,000, or ten percent of the amount in controversy. Ark. Code Ann. § 16-22-309 (Repl. 1994); *Lawson* v. *Sipple*, 319 Ark. 543, 893 S.W.2d 757 (1995).

Section 16-22-309 provides, in pertinent part:

> (a)(1) In any civil action in which the court having jurisdiction finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party or his attorney, the court shall award an attorney's fee in an amount not to exceed five thousand dollars ($5,000), or ten percent (10%) of the amount in controversy, whichever is less, to the prevailing party unless a voluntary dismissal is filed or the pleadings are amended as to any nonjusticiable issue within a reasonable time after the attorney or party filing the dismissal or the amended pleadings knew, or reasonably should have known, that he would not prevail.

> * * *

> (b) In order to find an action, claim, setoff, counterclaim, or defense to be lacking a justiciable issue of law or fact, the court must find that the action, claim, setoff, counterclaim, or defense was commenced, used, or continued in bad faith solely for purposes of harassing or maliciously injuring another or delaying adjudication without just cause or that the party or the party's attorney knew, or should have known, that the action, claim, setoff, counterclaim, or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law.

The Trial Court announced the ruling from the bench. He awarded Mr. Wynn $510 plus costs and an attorney's fee of 10% of that amount against Mr. Remet but not against Mr. McGehee, as it was found that Mr. McGehee had not contracted for the survey. Mr. Wynn's claims for attorney's fees in accordance with § 16-22-309 were denied. Discussing Mr. Wynn's claim for attor-

ney's fees pursuant to the statute, the Trial Court reviewed the history of the animosity among the parties and concluded Mr. McGehee had not acted maliciously in filing the $141,575.25 claim because he was "upset" at the time as he thought he "got a surveyor that was a friend of the Harpers that [he] didn't want."

With respect to Mr. Remet it was found that he thought the price for the survey was to be $350 and it turned out to be $510. In addition, Mr. Remet later learned, as the Trial Court stated, "that Mr. Wynn was a friend of Harper, and he made a lot of statements that . . . he has not substantiated . . . by proof today." The Trial Court commented further, in reaching his conclusion that Mr. Remet's claims were not totally baseless, that Mr. Remet had attempted to settle by paying Mr. Wynn's full $510 claim without success, "And Remet said, well, I'm not going into court, then, totally empty; I'm not going to give away everything if he's not willing to give any at all."

Nothing in the evidence cited in the Trial Court's ruling or elsewhere in the record supports any conclusion other than that, when this case went to trial, the counterclaims were completely baseless. Mr. Remet admitted he knew, through his second survey by a disinterested surveyor, that Mr. Wynn's survey was accurate.

■ As we read subsection (b) of the statute, a counterclaim "lacking a justiciable issue of law or fact" is one "commenced or used in bad faith" for one of two purposes, that of "harassing or maliciously injuring another or delaying adjudication without just cause. . . ." Stated in the disjunctive is a further situation justifying the fees, *i.e.*, "or that the party or the party's attorney knew, or should have known, that the . . . counterclaim . . . was without any reasonable basis in law or in equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law."

■ Both counterclaims contained allegations of abuse of process and the intentional infliction of emotional distress. To establish intentional infliction of emotional distress, the plaintiff is required to satisfy four elements: (1) the actor intended to inflict emotional distress or willfully and wantonly knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond

all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. AMI Civil 3rd, 404 (1989).

The elements of the tort of abuse of process are (1) a legal procedure set in motion in proper form, even with probable cause, and even with ultimate success, but (2) perverted to accomplish an ulterior purpose for which it was not designed, and (3) a willful act in the use of process not proper in the regular conduct of the proceeding. *Harmon* v. *Carco Carriage Corp.*, 320 Ark. 322, 895 S.W.2d 938 (1995).

Whether or not the counterclaims were filed with the purpose of delaying Mr. Wynn's municipal court claim of $510 without just cause, it is very clear that Mr. Remet knew or should have known that he could not prove all the elements or perhaps even one element of either of the torts he and Mr. McGehee claimed Mr. Wynn committed against them. While Mr. Remet's attempt to settle the matters were perhaps laudable, we find no justification for his taking the counterclaims to trial when the settlement failed so that he would not be "totally empty" before the Trial Court.

Reversed and remanded for proceedings consistent with this opinion.