Timothy Davis FOX, *et al. v.* AAA U-RENT IT, *et al.*

99-707                                                   17 S.W.3d 481

Supreme Court of Arkansas
Opinion delivered June 1, 2000
[Petition for rehearing denied July 13, 2000.]

*Ellen Brantley*, Chancellor;

*Rose Law Firm, P.A.*, by: *Allen W. Bird II* and *Garland J. Garrett*, for appellants.

*Beth B. Carson*, for appellee Department of Finance & Administration.

*Horne, Hollingsworth & Parker*, by: *Michael O. Parker*, for appellee Green Bay Packaging, Inc.

ROBERT L. BROWN, Justice. Appellants Timothy Davis Fox, Richard E. Holiman, and Hopkins Law Firm ("Attorneys") are attorneys who petitioned the chancery court to determine the existence of an attorney's lien on funds held by the Arkansas Department of Finance and Administration ("DFA"). The petition was the outgrowth of a class action brought by the Attorneys on behalf of certain business corporations from whom income taxes had been erroneously collected by DFA. The chancery court certified the class but found that the taxes had not been collected in error. We reversed the court's determination that there had been no error in the collection of taxes, and we also reversed

the certification of the class for the reason that the waiver of sovereign immunity prescribed by state statute only applies to individual claims for refund and not to class actions. *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997). Following our reversal of the class certification, DFA authorized and paid tax refunds to the business corporations who were former members of the class created by the Attorneys. The Attorneys claimed attorney's fees based on these refunds. Many of the business corporations paid the attorney's fee, but some have refused to do so. The chancery court denied collection of attorney's fees from those nonpaying corporations, and the Attorneys now appeal that decision. We agree with the chancery court that the Attorneys are not entitled to enforce an attorney's lien.

The history of this case is important to our resolution of this matter. After the chancery court certified the class of approximately 3,100 business corporations on August 30, 1995, the Attorneys advised all members of the proposed class by a Notice of Pendency of Class Action and of Rights of Class Members that they would advance the costs of litigation and after any recovery following an appeal would be awarded those costs and thirty-five percent of any refund as attorney's fees. None of the corporations, which are currently unwilling to pay the attorney's fees, elected to opt out of the class. After this court decided that this case could not be certified as a class action in *ACW, Inc. v. Weiss, supra*, but before a petition for rehearing had been decided, the Attorneys wrote the business corporations that were affected. In that memorandum, the Attorneys advised the corporations that they were entitled to file for a refund individually, but not as a class. The Attorneys further advised that they had filed a verified claim for refund with DFA on behalf of each corporation. The memorandum also stated that the Attorneys were entitled to thirty-five percent of any refunded amount as attorney's fees pursuant to the fee agreement that was part of the class action.

A second memo was sent out to the business corporations on September 15, 1997, after rehearing was denied by this court in *ACW, Inc. v. Weiss, supra*. In that memo, the Attorneys again informed the corporations that they were entitled to refunds. They further informed the corporations that they (the Attorneys) were claiming a lien for attorney's fees based on an expressed and implied contract in the amount of thirty-five percent of all refunds. Two

days later on September 17, 1997, the Attorneys filed a claim for an attorney's lien with DFA for thirty-five percent of those refunds based on tax years 1991 through June 31, 1997.

On September 17, 1997, DFA wrote the Attorneys and said that it expressed no opinion on the proper recipient of the thirty-five percent claimed as attorney's fees but that it did not want to risk paying that amount twice. Thus, those business corporations filing amended returns within the three-year limitations period would be refunded sixty-five percent of their entitled amount. DFA would hold the remaining thirty-five percent of the refunds pending a decision by the chancery court to determine the appropriate payee. On October 10, 1997, DFA wrote the business corporations and gave them the same information.

On November 13, 1997, DFA wrote the Attorneys that it would pay claimed refunds from 1991 forward and that for the 1996 tax year, DFA was automatically adjusting the income tax returns and issuing refunds for sixty-five percent of the refund amount irrespective of whether a claim was filed by the business corporation (the "auto-adjust refund"). The balance of thirty-five percent of the refunds would be held pending a decision on the attorney's lien. The retained fund was not interpled or transferred to chancery court.

On July 9, 1998, the Attorneys moved the chancery court to determine the validity of their claimed attorney's lien. On July 10, 1998, the Attorneys contacted those business corporations that had not agreed to pay the thirty-five percent fee and informed them of their lien claim. They further advised that if the nonpaying corporations wished to oppose the lien, they should file a response and appear at the hearing.

On October 28, 1998, a hearing was held on the lien matter in chancery court. It should be noted at this juncture that the vast majority of business corporations (over 1,800) had authorized DFA to pay the retained thirty-five percent of the refund to the Attorneys either by hiring the Attorneys or by signing a Statement of No Contest and Disbursement Authorization. The fees collected by the Attorneys to date are approximately $2 million. The hearing, therefore, only concerned the nonpaying corporations, which, as of this appeal, involved 562 business corporations. None of the

nonpaying business corporations appeared at the hearing; nor did counsel appear on their behalf. Some of these corporations, however, wrote letters to the chancery court contesting the fees requested by the Attorneys.

Following the hearing, the chancery court found in its order that the nonpaying corporations became eligible for refunds as a result of this litigation and due to the work of the Attorneys. Because of their work, according to the chancery court, DFA initiated the auto-adjust refund procedure whereby all business corporations paying the illegal tax in 1996 were not required to claim a refund but automatically received refunds of sixty-five percent of the taxes due. The chancery court referred to the high quality of the Attorney's work in its findings and stated that if it had the authority, it would award an attorney's fee of twenty percent of the funds held by DFA. The chancery court concluded, however, that the Attorneys did not have an express contractual right to the claimed thirty-five percent of the funds from the nonpaying corporations, but only had a contractual right with the named class representatives. In addition, the chancery court concluded that because the Attorneys were not fired, they had no right to compensation in *quantum meruit* or otherwise for work done or for benefits bestowed to the nonpaying corporations. Nor did an implied contract right exist, according to the chancery court, based on the fact that the nonpaying corporations received notice of the fee agreement. Finally, the chancery court ruled that a common-fund or substantial-benefit theory of recovery did not apply in this case because a common fund was not created. It concluded that it was without authority to award attorney's fees.

## I. Common Fund or Common Benefit

We begin by noting that the Attorneys assert that of the original 3,100 business corporations, 562 fall into the category of nonpaying corporations. The Attorneys first take issue with the chancery court's conclusion that no common fund or common benefit derived from their actions. They claim that the common-fund doctrine, in essence, is the equitable power in the chancery court to award attorney's fees based on the fruits clients gain from their attorney's actions. They further contend that the doctrine of a common fund should be recognized when the efforts of attorneys

result in a benefit to others and when the circumstances enable an identification of that benefit so that an attorney's fee may be determined. They emphasize that the chancery court expressly found that the nonpaying corporations received the benefits of the Attorneys' labor, which included avoiding future erroneous taxes, receiving an auto-adjust refund, and receiving the right to refunds for every year that the income tax was improperly collected.

■■ This court follows the American rule, which requires every litigant to bear his or her attorney's fees, absent a state statute to the contrary. *Lake View Sch. Dist. No. 25 v. Huckabee*, 340 Ark. 481, 10 S.W.3d 892 (2000); *Love v. Smackover Sch. Dist.*, 329 Ark. 4, 946 S.W.2d 676 (1997). Arkansas has recognized, in addition, the common-fund and common-benefit exceptions to the American rule. *Lake View Sch. Dist. No. 25 v. Huckabee, supra; Millsap v. Lane*, 288 Ark. 439, 706 S.W.2d 378 (1986); *Powell v. Henry*, 267 Ark. 484, 592 S.W.2d 107 (1980). The United States Supreme Court has also recognized the common-fund exception to the American rule. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939). In *Boeing*, a class action was involved, and the Court defined the common-fund exception as applying when a lawyer recovers a common fund for the benefit of persons other than himself or his client. Under such circumstances, that lawyer is entitled to a reasonable attorney's fee from the fund as a whole. The Court went on to say:

> The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*See id.* at 478 (citations omitted). The Court further stated that in a common-fund case, the class of persons should be easily identifiable, the benefits should be traceable, and the costs should be properly assessed in proportion to the benefit received. The Court concluded that the award of attorney's fees was proper in the *Boeing* class action because all of these requirements were met. Every member of the class, including any absentee member, was required "to share the attorney's fees to the same extent that he can share the recovery." *See id.* at 480.

Two foreign jurisdictions have addressed the issue of whether a common fund accrues in the context of tax refunds under facts that bear some similarity to those in the instant case. In *Bailey v. State of North Carolina*, 500 S.E.2d 54 (N.C. 1998), the North Carolina Supreme Court considered the common-fund exception in a class action which challenged the constitutionality of income tax legislation that placed a cap on exemptions for certain retirees. The State of North Carolina argued that the common-fund doctrine did not apply because the tax refunds or credits were separate, individual claims and not a common fund. The North Carolina Supreme Court, however, refused to accept this "technical interpretation" and cited the same test used in *Boeing. See id.* at 72-73. The court held that because the retiree beneficiaries were identifiable, the benefits could be traced, and the costs could be accurately shifted, attorney's fees should be awarded. The fact that the judgment resulted in many different refunds did not preclude recovery. The *Bailey* case, though, is distinguishable from the case at hand. In *Bailey*, a certified class of plaintiffs was involved and they created an identifiable fund under court control with their combined refunds from which an attorney's fee could be assessed. An analogous common fund was not created in the instant case.

A result contrary to *Bailey* was reached in *Hagge v. Iowa Dep't of Revenue and Fin.*, 539 N.W.2d 148 (Iowa 1995), and that was the decision that was persuasive to the chancery court in the case before us. In *Hagge*, a law firm successfully represented one taxpayer in a suit to recover tax refunds owed to a retired federal employee. After the suit was over, the law firm requested attorneys' fees from similarly situated retired federal employees, though a class action was not involved, and argued that the firm's efforts allowed many other federal retirees to become eligible for state income tax refunds, which created a common fund. The Iowa Supreme Court denied the attorney's fees. It noted that the Iowa Code did not allow tax refunds to be paid to anyone other than the individual taxpayer. As a result, the court refused to hold that a common fund had been created from which an award of attorney's fees could be made. The court concluded that the Department of Revenue owed each beneficiary a separate refund based on individual circumstances. Furthermore, in *Hagge*, as in the instant case, the Iowa Revenue Department had withheld part of the refunds due to the dispute over attorney's fees. The law firm contended that this created a common

fund, but the Iowa Supreme Court disagreed. It noted that there was no control by the trial court over this fund. Rather, each refund was the individual property of each taxpayer.

We agree with the reasoning of the Iowa Supreme Court in *Hagge*. No common fund under chancery court control was created by the actions of DFA in this case. DFA did not withhold the thirty-five percent of the refunds to create a common fund. It only did so as a prudent measure to avoid the contingency of having to pay the thirty-five percent twice.

We do recognize that the individual refunds, even to the nonpaying corporations, were the result of the efforts of the Attorneys and that this led to DFA's decision to refund erroneous taxes paid beginning in 1991 and to implement the auto-adjust refund for one year. But those facts do not offset the fact that no common fund was created by the Attorneys' actions. Moreover, at no point did the nonpaying corporations agree to legal representation by the Attorneys or authorize them to take any action on their behalf.

Nor do we see recovery as appropriate under a substantial-benefit theory such as we approved in *Lake View Sch. Dist. No. 25 v. Huckabee, supra*. In *Lake View*, the State waived sovereign immunity, acknowledged that a substantial benefit in a fixed dollar amount had accrued to the State due to the attorneys' efforts, and urged the court to approve the attorney's fees. Here, the nonpaying corporations have acknowledged no benefit that resulted from the Attorneys' efforts and have never recognized the attorney's entitlement to attorney's fees. The two situations are entirely different.

Other authority relied on by the Attorneys is likewise distinguishable. In *Millsap v. Lane, supra*, where this court recognized the substantial-benefit rule, we did so in the context of a shareholder derivative action brought on behalf of the corporation where the corporation received an identifiable benefit. In *Millsap*, representation of the shareholders by counsel in the derivative action was clear. In the case at hand, there was no legal relationship forged between the nonpaying corporations and the Attorneys.

In *Haynie v. Camden Gas*, 186 Ark. 842, 56 S.W.2d 419 (1933), also relied upon by the Attorneys, this court upheld an attorney's lien where attorneys had represented the City of Camden and its gas customers against Camden Gas Corporation in a dispute over a

city ordinance requiring lower rates for gas customers. Nearly all of the gas customers had signed an agreement to pay counsel twenty percent of any refund at a mass meeting of the customers. The City of Camden prevailed, and Camden Gas was required to make refunds to the gas customers from a fund accumulated by the utility. We held that the City of Camden was the representative or agent of the gas customers and that the law implied an agreement to the attorney's fees to be paid by all the gas customers who stood by and, without objection, accepted the legal services and benefits.

We view the *Haynie* facts as more analogous to a class action where the City of Camden acted as the representative of the gas customers and where a fund was created by the gas company. In the case before us, on the other hand, there was no class action and no named entity or agent acting on behalf of the nonpaying corporations. Nor was a common fund created by the efforts of the Attorneys, as has already been discussed.

Finally, there is the case of *Sprague v. Ticonic National Bank, supra.* In this 1939 case, a bank depositor, Lottie Sprague, lost money deposited in a bank due to the bank's closing. She sued in federal district court for a lien against the bonds that secured her deposit and was successful. Sprague then sued and alleged that her successful claim established precedent for "recovery in relation to fourteen trusts in situations like her own," and she prayed for reasonable attorney's fees based on those similar matters. 307 U.S. at 163. The Supreme Court then said:

> Whether one professes to sue representatively or formally makes a fund available for others may, of course, be a relevant circumstance in making the fund liable for his costs in producing it. But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation — the absence of an avowed class suit or the creation of a fund, as it were, through *stare decisis* rather than through a decree — hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation.

*Id.* at 166–167.

We simply disagree with the *Sprague* rationale and further disagree that the decision is precedent for cases such as the one we now have before us. Under the Attorneys' application of *Sprague,*

counsel for one litigant who is successful in obtaining a tax refund could collect attorney's fees from any successive taxpayer who is successful under similar circumstances irrespective of Ark. R. Civ. P. 23, which we adopted in 1979, and the class-action process. We decline to approve attorney's fees, under the *Sprague* reasoning where a class action is not involved, where no attorney-client relationship has been cemented with subsequent claimants, and where the sole basis for claiming the fee is *stare decisis*.

■ In sum, we hold that under these facts where no common fund was recognized or established and where no class action existed with respect to the nonpaying corporations so as to establish an obligation to pay fees, an attorney's lien is not enforceable.

## II. Quantum Meruit

■ The Attorneys next contend that apart from the common-fund doctrine, they are entitled to compensation for work done and for services performed on behalf of the nonpaying corporations. Citing *Crockett & Brown, P.A. v. Courson*, 312 Ark. 363, 849 S.W.2d 938 (1993), they urge that this is the rule of *quantum meruit* and that it applies if attorneys are discharged. Under the rule, the discharged attorneys are entitled to reasonable compensation for their services. Where no discharge is involved, the Attorneys claim that they are entitled to a lien for fees consistent with their agreement with their clients, and they cite us to Ark. Code Ann. § 16-22-301 (Repl. 1999), in support of this proposition.

■ The fallacy in the Attorneys' argument is that no attorney-client relationship developed between them and the nonpaying corporations. The Attorneys argue that such a relationship did exist for a time until this court reversed certification of the class in *ACW, Inc. v. Weiss, supra*, but that is not correct. The effect of our decision in *Weiss* was to nullify any class certification because it was contrary to the doctrine of sovereign immunity as set out in the State Constitution. Without an attorney-client relationship, there is no basis for claiming an attorney's fee under *quantum meruit* or § 16-22-301. The Attorneys' argument fails for that reason.

*III. Express or Implied Contract*

Finally, the Attorneys urge that each nonpaying corporation, either expressly or impliedly, agreed that the Attorneys would receive a fee. They base this on the notice that was sent out to the proposed class of business corporations which contained the fee arrangement. They point out that none of the nonpaying corporations objected to the fee arrangement or opted out of the class. They emphasize that under state law, an agreement for compensation may be express or implied. Ark. Code Ann. § 16-22-302 (Repl. 1999).

█ We agree with the chancery court that no express or implied contract arose under these facts. The nonpaying corporations never assented to legal representation by the Attorneys after the class action was out of the picture and never agreed to pay the Attorneys a legal fee. We believe that more is required to establish a legal relationship and entitlement to fees, absent a class action, than the fact that the nonpaying corporations requested a refund or received an auto-adjust refund from DFA, regardless of the fact that the Attorneys' work paved the way for these refunds. We reject the Attorneys' reasoning on this point.

█ Prior to submission of this case, the Attorneys moved this court to allow a supplemental addendum inadvertently omitted from the reply brief. That motion is granted.

Affirmed.

CORBIN, J., dissents.

DONALD L. CORBIN, Justice, dissenting. I dissent because I believe that these attorneys are entitled to a reasonable fee for their continued representation of the individual class members. After this court decertified the class, the attorneys notified the corporations that they were filing individual refund claims for each of them. The majority of the corporations agreed to pay a portion of the refunds to the attorneys for their representation. Obviously, these corporations knew that they would not be receiving anything but for the work of these attorneys. Some of the corporations, however, refused to pay. In my opinion, the attorneys are entitled to a *quantum meruit* fee for the work they performed for these nonpaying corporations. If these corporations did not want the

attorneys to file claims on their behalf, they should have informed them of their desire immediately after receiving notice that the attorneys would pursue individual refunds for them. Because they stood silent, I believe they must now pay for the services rendered.