2009 Ark. App. 590

**Daniel HEARNE and Debora Hearne, Appellants**

v.

**Diane BANKS, Appellee.**

**No. CA 08–922.**

Court of Appeals of Arkansas.

Sept. 16, 2009.

David L. Dunagin, for appellant.

Phillip Jack Taylor, for appellee.

JOHN B. ROBBINS, Judge.

This case concerning the ownership of certain real property in Fort Smith is before us for the third time.[1] Appellants Daniel Hearne and his wife Debora Hearne claimed an interest in this property by virtue of two deeds, one from Daniel Hearne's mother, and the other from David Banks, the former husband of appellee Diane Banks. The circuit court held that the deed from Hearne's mother failed for lack of delivery, and the deed from David Banks was procured by fraud. The Hearnes appeal from these rulings.[2] Diane Banks cross-appeals[2] from the circuit court's denial of her motion for attorney's fees. We affirm on direct appeal and on cross-appeal.

*Background*

In *Hearne I*, we held that the property was owned by three joint tenants, *i.e.*, Banks, her then-husband David Banks, and Betty Hearne, the mother of Banks and Daniel Hearne. After the lower court's decision but before the appeal was filed, Betty Hearne signed a deed that purported to convey her interest to Daniel Hearne. The deed was not recorded until January 14, 2004, four days after Betty Hearne's death. In September 2004, David Banks signed a quitclaim deed that purported to convey his interest to Hearne.

After obtaining deeds from those two joint tenants, Hearne filed a petition seeking partition of the property, with the proceeds to be divided according to the par-

ties' interests. Banks filed an answer and counterclaim in which she asserted that the deed from Betty Hearne was never delivered because she retained control over the quitclaim deed throughout her lifetime.

David Banks and Diane Banks joined in executing a quitclaim deed of the property to Diane Banks. The deed was dated May 5, 2006, and recorded on May 16, 2006.

In *Hearne II*, we held that the circuit court erred in finding that certain issues decided in *Hearne I* were not res judicata in the partition suit, and that the circuit court did not address certain factual issues that were critical to the resolution of the partition suit. We directed the circuit court to address those issues.

*Evidence at Trial*

Daniel Hearne testified about the deed from his mother to himself and said that, although he was present, he was not involved in preparing the deed because his mother described how she wanted the deed drawn. According to Hearne, his mother wanted to record the deed but he persuaded her not to do so, in case she changed her mind. He said that she gave him the deed the same day it was executed.

Hearne also discussed the deed from David Banks to himself, stating that Diane and David were already divorced at the time that the deed was executed. Hearne did not know if David Banks had the opportunity to discuss the deed with an attorney. He added that he had explained

1. *Hearne v. Banks*, No. CA00–396, 2000 WL 1862675 (Ark.App. Dec. 20, 2000) (unpublished) (*Hearne I*); *Hearne v. Banks*, No. CA07–570, 2008 WL 444402 (Ark.App. Feb. 20, 2008) (unpublished) (*Hearne II*).

2. For convenience, we refer to Daniel Hearne as if he were the sole appellant.

the deed to David Banks. Hearne had sold David Banks another home, but later filed an action in unlawful detainer to remove David Banks after he breached the contract.

On cross-examination, he stated that his mother had told him to record the deed but that he had told her that she might change her mind and, if the deed was not recorded, all that had to be done was to give it back to her. He also said that his "mother had possession of the deed, I let her keep it." He said that the deed was handed to him in the escrow office and kept with all of her other papers in Hearne's safe. Hearne also acknowledged that if the deed was in his safe, it was in his possession, not his mother's. He also said that, if his mother asked for the deed, he would have given it back to her. According to Hearne, he did not pay his mother anything for the quitclaim deed. He asserted that his mother delivered the deed to him. Hearne further claimed that he did not know that his mother was going to testify at the divorce trial in *Hearne I* that she wanted Diane Banks to receive the property. He said that he told Diane Banks about the deed from Betty Hearne to himself in 1999 or 2000.

Diane Banks testified that Betty Hearne purchased the house for Banks and her children.

David Banks testified that Betty Hearne bought the property at issue because Betty Hearne wanted Diane Banks and her children to have a place to live and not to worry about making house payments. After he and Diane divorced, he said that Daniel Hearne called him to offer to rent him a house for $100 per month. This house was a few blocks away on the same street as Diane Banks' residence. David Banks said that Hearne asked him several times to sell his interest in Diane's residence, but he refused each time. Banks

said that Hearne offered to sell him another property that Hearne had purchased for $10,000 for the same price. According to Banks, he was deceived into signing the quitclaim deed to Hearne because he thought it was for this other property he was buying from Hearne. Banks said that he was not shown the front of the quitclaim deed he signed, adding that he was never paid for the quitclaim deed. Banks asserted that he would not have conveyed his interest because it was to be Diane Banks' residence. Hearne was present when Banks signed the quitclaim deed, which was dated the same day as the contract for the purchase of the other property from Hearne.

On rebuttal, Daniel Hearne denied that he told David Banks to "sign right here" and asserted that David Banks knew the deed was to the property at issue because, according to Hearne, David Banks had offered to quitclaim his interest in the property in exchange for Hearne's help in obtaining the loan to purchase the property. Hearne said that he assisted David Banks in getting into a house that needed work and that he had bought materials to make repairs, as well as loaning David money to pay electric bills. He also stated that no money was exchanged when he helped David Banks buy the house. He also denied forging his mother's name. He further said that he did not list the consideration as an exchange of properties.

### The Circuit Court's Rulings

The court entered its order on April 15, 2008, and found that the deed from Betty Hearne was never delivered in her lifetime. The court concluded that Betty Hearne's interest in the property passed to Diane and David Banks as the surviving tenants of a joint tenancy. The court then found that Hearne had acquired David Banks' interest in the property by fraud

and that David Banks never intended to convey the property to Hearne. As a result, the court concluded that Hearne had no interest in the property and that Diane Banks was the sole owner of the property. Hearne timely filed his notice of appeal.

Banks filed a motion for attorney's fees under Ark.Code Ann. § 16–22–308. In her supporting brief, she asserted that she was entitled to fees under the statute, as well as for having to bring a contempt proceeding and on the basis that her efforts created a "common fund" for the benefit of Betty Hearne's heirs. The circuit court denied the motion without explanation. Banks timely filed her notice of cross-appeal from this decision.

### Standard of Review

We review a circuit court's findings of fact after a bench trial to determine whether those findings are clearly erroneous. *First Nat'l Bank v. Garner*, 86 Ark. App. 213, 167 S.W.3d 664 (2004). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Recognition must be given to the circuit judge's superior opportunity to determine the credibility of witnesses and the weight to be given to their testimony. *Brown v. Blake*, 86 Ark. App. 107, 161 S.W.3d 298 (2004).

### Arguments on Appeal

Hearne's first point challenges the circuit court's finding that there was no delivery of the deed from Betty Hearne to himself. As a general rule, a deed is inoperative unless there is a valid delivery. *Wilson v. McDaniel*, 247 Ark. 1036, 1038, 449 S.W.2d 944, 946 (1970). Further, a presumption of a valid delivery attaches when a deed is recorded. *Corzine v. Forsythe*, 263 Ark. 161, 163, 563 S.W.2d 439, 440 (1978). This presumption, however, is not conclusively established when there is proof of other factors pertaining to the deed which may rebut the presumption. *Baldridge v. Baldridge*, 100 Ark.App. 148, 265 S.W.3d 146 (2007).

Our supreme court has said that it has never upheld a deed when (1) the parties did not intend to pass title immediately and (2) the grantor never lost dominion over the deed. *Broomfield v. Broomfield*, 242 Ark. 355, 413 S.W.2d 657 (1967). Whether a deed has been delivered is generally a question of fact involving intentions manifested by acts or words. *Woodruff v. Miller*, 212 Ark. 191, 205 S.W.2d 181 (1947). There is no delivery unless there is an intention upon the part of those immediately concerned that delivery is to pass title immediately or at a time expressed in the document, and that the grantor shall lose dominion over the deed. *Id.* We cannot say that the circuit court was clearly erroneous in finding that the deed from Betty Hearne to her son was not delivered in her lifetime. The circuit court relied on several inconsistencies in Daniel Hearne's testimony, including testimony concerning whether Betty Hearne lost dominion and control over the deed. Hearne testified that he considered the deed to be in his mother's possession, despite the deed being in his safe, and that if his mother had wanted the deed for any reason, he would have given it to her. Moreover, Betty Hearne's deed to Daniel Hearne was executed on the same day that the notice of appeal in *Hearne I* was filed. Betty Hearne's appeal of that decision is inconsistent with her having an intention to immediately pass title to the property to Daniel Hearne. Here, the court's ruling turns upon the credibility of the witnesses, and we defer to the circuit court's superior position to judge the credibility of the witnesses.

In his second point, Hearne argues that the circuit court's finding that he procured the deed from David Banks by fraud is clearly erroneous. When a deed is challenged based on fraud, the law requires clear and convincing proof before the deed may be set aside. *Davidson v. Bell,* 247 Ark. 705, 447 S.W.2d 338 (1969); *Baker v. Helms,* 244 Ark. 29, 423 S.W.2d 540 (1968). On appeal, the question is not whether we are convinced there was clear and convincing evidence to support the findings of the circuit court, but whether we can say the findings are clearly erroneous. *Bishop v. Bishop,* 60 Ark.App. 164, 961 S.W.2d 770 (1998). To be clear and convincing does not mean the evidence must be uncontradicted. *O'Flarity v. O'Flarity,* 42 Ark.App. 5, 852 S.W.2d 150 (1993). In cases where clear and convincing evidence is required, the appellate court still defers to the superior position of the circuit judge to evaluate the evidence. *Id.*

Hearne's argument is essentially a challenge to David Banks' credibility. Hearne testified that David Banks quitclaimed his interest in the subject property to Hearne in exchange for Hearne's conveying another property to David Banks. David Banks testified that he did not know he was conveying his interest and that he never intended to do so. As noted, we defer to the superior position of the circuit judge to assess the credibility of the witnesses.

### Arguments on Cross-appeal

Banks argues that the circuit court erred in refusing her request for attorney's fees. We find that the circuit court correctly denied Banks' request for fees because there is no statutory basis for such an award. Arkansas follows the "American Rule," which provides that, absent statutory authority or a contractual agreement between the parties, each party to litigation must bear its own attorney's fees and may not recover those fees from an adversary. *See, e.g., Wynn v. Remet,* 321 Ark. 227, 902 S.W.2d 213 (1995). Arkansas Code Annotated section 16–22–308 (Repl.1999), which authorizes an award of fees in certain civil actions, does not apply because this case does not involve a contract for the sale of goods or a breach of contract. There is no merit to Banks' argument that she was entitled to a fee because her actions created a "common fund" or "common benefit" for the benefit of Betty Hearne's heirs because there was no fund created or benefit to anyone but Banks. *See Fox v. AAA U–Rent It,* 341 Ark. 483, 17 S.W.3d 481 (2000). It is well established that attorney's fees may be awarded in civil contempt proceedings, *Osborne v. Power,* 322 Ark. 229, 908 S.W.2d 340 (1995), and Banks sought to have Hearne held in contempt for failing to provide an accounting. However, the court declined to find Hearne in contempt. Therefore, this cannot be the basis of an award of attorney's fees. Although there is a statutory provision for an award of attorney's fees in a partition suit, that statute does not authorize an award of fees to Banks because she was not the party filing the action and the circuit court did not order partition. *See* Ark.Code Ann. § 18–60–419(a)(1).

Affirmed on direct appeal; affirmed on cross-appeal.

MARSHALL and BAKER, JJ., agree.